IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JENNIFER BEASLEY, DR. KIFFANY PRIDE,
LAURA SHIRLEY AND NICOLE TOWNSEND                    PLAINTIFFS

VS.                            CASE NO. 4:18CV00508 DPM

DR. CHARLES MCNULTY, in his official
capacity as Superintendent of Schools of the
Pulaski County Special School District; the BOARD
OF DIRECTORS of the Pulaski County Special
School District; and the PULASKI COUNTY SPECIAL
SCHOOL DISTRICT, a public body corporate              DEFENDANTS

## PROPOSED SECOND AMENDED COMPLAINT

### I. BACKGROUND

1. In 2000, this Court entered an Order approving a plan for the creation of a unitary school system approved by representatives of a black student class and the school district itself.  In the intervening years, the school district has been deficient in meeting the overall objectives of Plan 2000. No less than six separate superintendents of the district's schools have served during this time. Dr. Jerry Guess held the position between July, 2011 and July, 2017.  He was terminated by the Board in the summer of 2017 because of commitments regarding staff that were made to the United States District Court and to the representatives of the class regarding desegregation commitments. See Exhibit 1, Letter dated May12, 2017 (the Roberts letter).  The district also terminated district counsel Allen Roberts.   One of the commitments made to class counsel by Guess and Roberts was that Dr. Janice Warren, an African American female, then serving as Assistant Superintendent for Equity and Pupil Services and Director of Elementary

1

Education, would be recommended to serve as Deputy Superintendent of Schools.  Dr. Warren served as Assistant Superintendent for Equity and Pupil Services and Director of Elementary Education.  The Board rejected Dr. Guess' recommendation.  When the Board abruptly discharged Guess in July, 2017, the Board hired Dr. Warren as the Interim Superintendent to serve for the remainder of the 2017-2018 school year. Upon becoming Interim Superintendent, Dr. Warren became responsible for the implementation of the entirety of Plan 2000.   Because she received additional complaints that a school district senior Caucasian employee was acting contrary to Plan 2000 with respect to establishing equal schools in the predominately African American sections of the district, Dr. Warren conducted a separate investigation. She issued two reports regarding her findings.  The reports were presented to the United States District Court and to the school board.  See Exhibits 2 and 3 – Reports dated August 25, 2017 and September 5, 2017.

The school official responsible for the misrepresentations of actions regarding school construction, Derek Scott, promptly resigned.   The Court's expert also issued a report with respect to comparisons of certain facilities in the district. Dr. Guess had committed to investigate Scott's possible indiscretions.  Guess had also committed that Chief Executive Officer Paul Brewer would not be employed for the 2018-19 school year. Brewer had served as Interim Chief Executive Officer for seven years.  The actions and recommendations of Dr. Guess and Dr. Warren regarding Derek Scott, on information and belief, caused at least three of the district's board members to become upset and more adverse to Dr. Warren.  The board members who expressed concern were President Linda Remele, Alicia Gillen and Eli Keller. Remele had induced Dr. Guess and Derek Scott to advance a huge costly enhancement project at Sylvan Hills High School so that it

2

would be comparable to Joe T. Robinson and other high-end schools constructed in west Little Rock.  Board member Brian Maune touted the Robinson construction project located in his neighborhood, but which was not a part of the court approved plan known as Plan B.  These board members were opposed to building equal facilities in the areas where African American persons predominately lived.

2.   Dr. Warren held regular monthly meetings with the school principals during which she emphasized the importance of compliance with the requirements of Plan 2000. For example, in January 2018, Dr. Warren relied upon her reports and the report of the Court's expert in order to demonstrate to the principals the pitfalls of bad faith compliance with the provisions of Plan 2000.  Most of the secondary principals were Caucasian.  At least one of the principals, Lance LaVar at Robinson Middle School, objected to Dr. Warren's comments and reported them to the Board President Linda Remele and Board member Alicia Gillen.  LaVar was a protégé of Remele.  She was instrumental in his selection as a principal.  Because of Dr. Warren's emphasis to the principals, Remele and Gillen became more negative to Warren.  They encouraged the Board to promptly seek a new superintendent in order to replace Dr. Warren.

3. When the Board approved the superintendent search in January, 2018, Dr. Remele assured Dr. Warren that she would be fairly considered for the permanent position of superintendent. Remele and Gillen publicly asserted that a new superintendent should have "prior experience as a school superintendent in a large school district" as prerequisite to selection. Of the applicants whom the Board considered, only Dr. Warren had superintendent experience in a large school district.  The Board then selected Dr. Charles McNulty as the new superintendent of the Pulaski County Special

School District.  McNulty's objective qualifications for the position were and are inferior to those of Dr. Warren. Dr. Warren had more than ten years superintendent experience (in the Crossett, Arkansas school district, a 3000-student school district; and in PCSSD, a 10,000 plus student school district).  McNulty's superintendent experience was limited to a 500-student school district for a short period of time. Exhibit 4- Excerpt from McNulty application.  Despite her service to PCSSD, the Board refused to afford Dr. Warren the courtesy of a Board interview for the position. It only interviewed the Caucasian applicant, Dr. Charles McNulty; and then it hired him on the spot!

4.   The hostility toward Dr. Warren because of her insistence upon holding staff accountable for adherence to Plan 2000 commitments was expressed overtly by Board members Remele, Gillian and Mike Kemp beginning in March, 2018 and continuing throughout her tenure as Superintendent.  Those Board members yelled at, berated and expressed open hostility toward Dr. Warren during at least two public board meetings on April 28, 2018 and June 11, 2018.  Despite their hostility, Dr. Warren recommended the reemployment of staff for the 2018-19 school year.  She informed the Board of the progress in student achievement that was being made by the curriculum instruction team of "program administrators" which she had assembled.  Three program administrators are African American (three of the plaintiffs) and two are Caucasian.[1] They reported to Dr. Warren through Dr. John Tackett, Director of Secondary Education and Ms. Linda Goodwin, Interim Director of Elementary Education. Tackett and Goodwin are Caucasian.

5.   In the presence of Dr. Warren on April 10, 2018 and April 19, 2018, the Board

---

[1] . Two additional members of the team were assigned to Will Reid, Chief Technology Officer, with the title of Senior Instructional and Professional Development Facilitators. Reid and these team members were Caucasian.  They were unaffected by the Board directed budget cuts.

expressly directed Paul Brewer to make recommendations of staff for termination and to collaborate with Dr. McNulty.  Exhibits 5 and 6 - Facebook posts dated April 11 and April 20, 2018.  Brewer did not consult with Warren regarding his proposed recommendations; nor did McNulty.

6.  This case involves the school district Board of Directors' rejection of Dr. Warren's recommendation regarding retention of staff members for the 2018-19 school year.  The judgment of Dr. Warren was that budget cuts necessitated by loss of revenue could rationally be addressed by attrition.  She informed the Board in February or March, 2018 of the likely resignations of a number of administrators each of whom earned salaries of $100,000 or more. Exhibit 7 – Warren's Attrition List.  The Board was not satisfied with Dr. Warren's "attrition rationale" for budget reductions.  It then directed Paul Brewer to recommend cuts which expressly included the plaintiff program administrators and plaintiff Laura Shirley. The Board did not direct specific cuts of Caucasian staff.

In April, 2018, Brewer consulted with Dr. McNulty by phone regarding the cuts. McNulty stated that he wanted to eliminate the program administrators but gave no explanation for his decision.  Brewer reported McNulty's decision to the school board in April 19, 2018.  Brewer then made his balancing act of "one to one" cuts by cutting four Caucasian staff and himself.  Brewer's view was that race would not be considered a factor in his approach because he equally affected African American and Caucasian staff. His decision had an adverse impact upon African American staff and was contrary to the promises set forth in the Roberts' letter. Brewer's view later was that plaintiffs could not argue that race was a factor in his approach to budget cuts because they equally

5

adversely affected African American and Caucasian staff.  McNulty spoke to plaintiffs in April and May, 2018 by email, in person and by telephone. McNulty was thus an active participant in the decision to terminate and/or reduce in status each plaintiff.

Moreover, during this process, Brewer did not provide a business case or written justification to the Board for the recommended budget cuts.  In previous years, Dr. Guess' and Dr. Warren's budget cut recommendations presented to the Board were in writing with justification.  The cut list McNulty and Brewer presented "gutted" the heart of the district's core curriculum and instruction team.

7. Guess authorized Dr. Warren to oversee more substantive implementation of the educational commitments of Plan 2000 which included the Ross Plan. Plaintiffs Beasley, Pride and Townsend were central to and expressly involved in addressing remediation of academic differences between African American and Caucasian students.  Under Dr. Warren's leadership, that staff had the responsibility of aligning curriculum, training staff and meeting the requirements of the Arkansas Department of Education (ADE) focused upon enhancing learning and remediating the achievement gap between African American and Caucasian students.

8.  Plaintiff Shirley oversaw and monitored the district's Gifted and Talented (G/T) program.  The parties agreed, and this Court approved that the G/T program was unitary.  Shirley worked with Plaintiffs Beasley, Pride and Townsend and with Dr. Warren for the purpose of enhancing learning and remediating the achievement gap between African American and Caucasian students.

9.  Of the five white employees who were cut, Leta Ray and Brandy Beckman worked as "program administrators." Both were new to the position.  Danny Ebbs and

JoAnn Kohler were both Caucasian, over Athletics and Fine Arts, respectively. Neither was central to the work of Plaintiffs. Dr. McNulty decided to keep Caucasian program administrator Leta Ray and he gave her the new Instructional Strategist position. Brewer assisted Caucasian program administrator Brandy Beckman with securing employment in her home town adjacent Benton, Arkansas school district. At the end of the school year, only the three African American program administrators had not secured employment.  Brewer saw to it that Ms. Kohler could use seniority to secure her position and her pay in the district. Shirley's critical position was not equally accommodated.

10.  In the process their interaction about cuts which included members of the Board, Dr. McNulty told Brewer that Brewer's job would be safe for the 2018-19 school year, <u>even though the Board had expressly cut it</u>.  Brewer has served as de-facto Deputy Superintendent of Schools since July 1, 2018.  McNulty did not post the position held by Brewer as required by district policy.  It may be regarded that McNulty and the Board rewarded Brewer for faithful service in helping to implement their discriminatory scheme by not requiring him to use the district's purported nondiscriminatory approach by not posting his position and by not making it competitive as he did for the three African American program administrators.

11.  Brewer recommended that Plaintiff Shirley's position be reduced in pay by $10,000 or more.  Her contract was reduced from twelve months to eleven months. Plaintiff Shirley had the Learning Services task of addressing the district's overall Gifted and Talented programs. Plaintiff Shirley's employment circumstance is comparable to that of JoAnn Kohler, the Caucasian Director of Fine Arts.  Brewer cut her pay also by twenty-eight days for a similar amount of approximately $10,000.00.  He then reinstated

Ms. Kohler's days by giving her additional work.

Kohler informed Plaintiff Shirley that Brewer told her that he had offered similar extra work to Shirley which Shirley had declined.  Brewer stated that he did so because Shirley was senior to Kohler.  Brewer claimed further that Shirley's reduction in pay does not amount to a RIF, but he treated Kohler's circumstances, i.e., to address seniority by first making an apparent offer to Shirley and then to Kohler.  Shirley requested that she be allowed to "bump" a junior in seniority person serving as a school principal.  Brewer informed Shirley that he could not honor her request because she had not been reduced in force. Accordingly, Plaintiff Shirley was denied the opportunity to return to her former position of principal despite her seniority. Brewer had no legitimate, nondiscriminatory reason to diminish either Plaintiff Shirley's or Kohler's pay by one month.  He initially reduced Ms. Kohler's pay in order to mask his racial decision regarding Plaintiff Shirley. Further, neither Brewer, McNulty nor the PCSSD have legitimate nondiscriminatory reasons to eliminate the program administrator positions which Plaintiffs Beasley, Pride and Townsend held during the 2017-18 school year.

After Plaintiffs had filed the original Complaint, Shirley exercised her bumping right to be assigned  as principal for Robinson Middle School, for which she would receive greater compensation.  She did so on or about June 11, 2019.  Despite her application for the position, the PCSSD selected a younger, less-qualified woman, Yaa Appiah-McNulty, for the position. Shirley, who was born in 1958, had five years of experience as an assistant principal and four years of experience as a principal within the PCSSD.  She also had experience as an administrator who exercises supervision over principals. By contrast, Appiah-McNulty has much less of this kind of relevant experience to be middle

school principal for the PCSSD.

## II. JURISDICTION AND BASIS FOR RELIEF

12.  The court's jurisdiction is pursuant to 28 USC §1343 and 42 USC § 2000(e) et seq. The pendent state law claim is pursuant to ACA § 1501, et. seq.

13.  The parties are all residents of Pulaski County, Arkansas.  Venue is thus appropriate in Little Rock, Pulaski County, Arkansas.

14. Plaintiffs assert and rely upon for relief the Due Process Clauses of the 14th Amendment, 42 USC § § 1983 and 2000(e), et. seq. and Arkansas Code Annotated § § 16-17-1501, et. seq., 16-17-1502 (2), 1503(2) (c), and 1506(b) (1).

15.   Plaintiffs bring this action in order to redress racially discriminatory and arbitrary treatment directed by the defendants toward them which resulted in their loss of employment (Beasley, Pride and Townsend) or by the reduction in pay and failure to hire. (Shirley). Regarding the middle school vacancy, Shirley is also alleging that she was discriminated against because of her age (61) and in retaliation for filing the original Complaint.

## III. PARTIES

16. Plaintiffs are Jennifer Beasley, Kiffany Pride, Laura Shirley and Nicole Townsend.  Each plaintiff is a United States citizen of African ancestry. They were employed as teachers for the Pulaski County, Arkansas Special School District (PCSSD) during the 2017-18 school term. A.C.A. § 6-17-1502. During the 2017-18 school term, each plaintiff satisfied the work expectations as teachers employed by the PCSSD. Each plaintiff had an expectation of continued employment for the PCSSD for the 2018-19 school year until each plaintiff received notice of either termination or nonrenewal for the

2018-19 school year.

17.   Defendants are Dr. Charles McNulty, Superintendent of Schools of the PCSSD; and the corporate Board of Directors of the Pulaski County Special School District. The School Board is prohibited from making or directing employment decisions for its staff other than the Superintendent of Schools. A.C.A. §6-17-1506(b) (1); A.C.A. § 6-13-620.622, PCSSD Certified Personnel Policies, p. 131, Exhibit 10.  The Defendant Board is being sued because it forced Interim Superintendent Janice Warren to make administrative, racial and arbitrary decisions which she advised the Board were financially and educationally unsound.  She refused to defend the decisions during the administrative proceedings held before the Board on June 11, 2018.  Paul Brewer defended case during the June 11th proceedings for the district with heavy reference to the input from Dr. McNulty and defendant board members. The PCSSD is an "employer" as that term is defined within 42 USC § 2000e, et. seq.

18.   Plaintiff Jennifer Beasley is a graduate of University of Louisiana at Monroe (BS) and Grand Canyon University (M.Ed.). Plaintiff Beasley was employed by the PCSSD beginning with the 2012-13 school year.  She has served as an Instructional Technology Specialist, School Improvement Specialist, and as Program Administrator. Her work for the school district was regarded as commendable.  Plaintiff Beasley filed a timely charge with the Equal Employment Opportunity Commission on August 31, 2018. She received Notice of Right to Sue on October 12, 2018.  The facts alleged therein are incorporated herein by reference.

19.   Plaintiff Kiffany Pride is a graduate of Hendrix College (BS); the University of Arkansas – Little Rock (UALR) (M. Ed); Walden University (MA); and Harding

University, (Ed. S) and (Ed.D.). She began work in PCSSD as a Program Administrator during the 2012-13 school year.  Her work for the school district was regarded as commendable.

20.  Plaintiff Laura Shirley is a graduate of Harding University (BS) and the University of Central Arkansas (UCA) (M.Ed.) (BS) and (M.Ed.).  At the time of partial nonrenewal, Plaintiff Shirley worked as Director of Gifted and Talented Education. Shirley has been employed by the PCSSD for 24 years. She has held the positions of teacher, Middle School Assistant Principal and Middle School Principal.  Her work for the district was regarded as commendable.   Plaintiff Shirley filed a timely charge with the Equal Employment Opportunity Commission on November 2, 2018.   She received Notice of Right to Sue on November 19, 2018.  Her second EEOC charge was filed on October 7, 2019.  On October 4, 2019, the EEOC mailed her a second Notice of Right to Sue. The facts alleged therein are incorporated herein by reference.

21.  Plaintiff Nicolle Townsend is a graduate of Jones College (BS) and the University of Phoenix (MBA).  She previously worked as a math teacher, elementary math coach, elementary assistant principal, elementary principal and High school vice principal. She began work during the 2017-18 school year as a Program Administrator. Her work for the district was regarded as commendable.

22.  The challenged decisions were all made by the Caucasian leadership of school district, Dr. Charles, McNulty, Mr. Paul Brewer, Mr. Will Reid, Dr. John Tackett, and school board members Dr. Linda Remele and Ms. Alicia Gillen.  However, the persons normally responsible for the personnel decisions at the time were Dr. Janice Warren and Ms. Shawn Burgess, Director of Human Resources both African American

persons. Neither agreed with the cuts of plaintiffs.

## IV. THE FARCE OF THE BUDGET CUTS

23. Since July 1, 2016 the defendant Board has not seen fit to address reduction of staff for budgetary reasons.  On information and belief, it has increased the size of its staff administrative staff for the 2018-19 school year.  Moreover, it has yet to request or require defendant McNulty or CFO Palmer to address budget cuts from the category of restricted funds. There is not a line item budget regarding restricted funds. The last one that appears on line is for the 2014-15 school term.

24. In February, 2018, the defendant Board informed Dr. Warren that it wanted to reduce the budget for the next year by about one million dollars.  Dr. Warren informed the defendant Board that this would be achieved by attrition.  Soon thereafter, the Board voted to replace Warren with defendant McNulty effective July 1, 2018.  The board then instructed Brewer to develop cuts from within the curriculum department of the central office.  It did so to accommodate defendant McNulty to allow him to redirect the curriculum.  The curriculum department was majority African American, three African American Program Administrators and two Caucasian program administrators. One of the Caucasian Program Administrators was conditionally certified.  Both were in their first year.  Two of the three African American Program administrators were in their sixth year.  Defendant McNulty met specifically with the program administrators and informed them that he wished to change the direction of the curriculum department and that he would be offering reemployment to all the affected department staff. At the time he met with the program administrators, the curriculum team was successfully addressing the curriculum needs of the district. Dr. McNulty reneged on his

commitments of re-employment to the plaintiff Program Administrators.

25. Brewer supplemented the cuts of the Program Administrators by reducing by $10,000 the salaries of three people and by cutting himself, Directors Goodwin and Tackett.   Their three salaries total approximately $475,000.00.  The difference between the Warren cuts and the McNulty/Brewer cuts is that Warren's were all through attrition.  Moreover, Brewer had no intention of resigning and he was aware that one of the Program Administrators, Beckman had found employment elsewhere.  In essence, the cuts recommended by Brewer amounted to approximately $330,000.00.  That figure represents three one thousandths of one percent of the district's budget for the 2018-19 school year.

26. Caucasian Program Administrator Leta Ray was in her first year with the district. Ray was not certified as an administrator. She was hired with an Additional Licensure Program (ALP) for the 2017-18 school year, while Plaintiffs Beasley, Pride, and Townsend were fully certified as administrators. Defendant McNulty, the Board and Brewer retained and rehired Ray notwithstanding Ray's lesser experience and objective qualifications.  They offered no justification for Ray's retention.  Defendants McNulty and Board treated Paul Brewer in the same manner as they treated Leta Ray. They rehired Brewer without posting.

27. Plaintiffs submit for comparison the budget cuts for 2018-19 represented by Dr. Warren to those presented by McNulty and Brewer. They are as follows:

| Warren Attrition | | McNulty/Brewer Cuts | |
|---|---|---|---|
| Althsul, NB | $136,000.00 | Beasley | $101,000.00 |
| Brewer, NB | 169,500.00 | Beckham-NB | 89,000.00 |
| Goodwin, NB | 150,000.00 | Brewer –NB | 169,500.00 |
| Scott, NB | 181,000.00 | Ebbs – NB | 10,000.00 |

| | | | | |
|---|---|---|---|---|
| Tackett, NB | 157,000.00 | Goodwin- NB | 150,000.00 |
| Viswathan, NB | 105,000.00 | Pride | 113,500.00 |
| Wheeler, NB | 100,000.00 | Ray – NB | 96,500.00 |
| | | Shirley | 10,000.00 |
| | | Tackett- NB | 157,000.00 |
| | | Townsend | 105,000.00 |
| Total | $998,500.00 | Total | $1,001, 000.00 |

Brewer, McNulty, Board Members Remele, Gillen and Chief Financial Officer Denise Palmer guided the decision to "gut" the district's curriculum department. They should have known that the plaintiff Program Administrators were employed pursuant to funds specifically derived from and restricted by the Arkansas Department of Education (ADE).  Exhibit 8 - Preliminary State Aid Notice 2017-18, lines 11, 20, 33.  The Defendant Board knew or should have known that CFO Denise Palmer had not prepared any budgets appraisals or numbers that addressed the limitations of law with respect to use of restrictive funds.

Neither Brewer nor McNulty explained the fiscal impact of the budget cuts directed by the Board upon the restricted budget of the district. Further, when the school board acted to require termination of the Program Administrators, there was no business case, nor educational justification presented by the McNulty or Brewer for the cuts [initiated by Gillen and Remele and enforced by the Brewer and McNulty].

28. Pulaski County Special School District hand delivered non-renewal letters of teacher contracts to the plaintiffs indicating to reduce expenditures of local unrestricted funds and elimination of their positions as District Curriculum Program Administrator.

29. Defendant McNulty, Remele, Brewer and Gillen should have known that the source of funding for plaintiffs' Program Administrators' salaries was restricted funds (categorical) Special Needs – National School Lunch Act.  National school lunch state

14

categorical funds were allocated for the purpose of employing Curriculum

Specialists/Data Coaches, such as plaintiffs; they were employed for the purposes that

are research based and aligned to the Arkansas Content Standards for improving

instruction and increasing achievement of students at risk who were not meeting

challenging academic standards.  In addition, the plaintiff Program Administrators

provided research-based professional development in the areas of literacy, mathematics,

and science in grades K-12.  Also, the plaintiff Program Administrators in the PCSSD

were tasked to assist to assist the district in meeting unitary status in student

achievement.

The recommendation submitted by Paul Brewer to the Board for Reduction in

Force budget cuts is set forth in Exhibit 9, "PCSSD Certified Allocations".  The positions

to be cut as submitted by Brewer included:

| Position | Change | |
|---|---|---|
| Chief Executive Officer/HR | RIF | (page 2) |
| Director of Elementary Education | RIF | (page 4) |
| Director of Secondary Education | RIF | (page 4) |
| Program Administrator (5) | RIF | (page 5) |

30. Brewer and McNulty represented to the school board that the budget cuts

which they were recommending were pursuant to a district wide Reduction in Force.  See

Exhibit 10, Board Policy; and A.C.A. § 6-17-2407. See also Brewer's testimony, Exhibit

11, hearing June 11, 2018.

The RIF policy required a district wide evaluation of staff for RIF purposes.

Brewer did not perform a district evaluation of staff before he made the recommendation

for proposed cuts. Brewer, however, told the Board that because he was not

recommending that RIF apply, the RIF policy did not apply. Brewer's comments are set

forth in a hearing before the Board held on June 11, 2017.  See Exhibit 11, pages 80-86.

31.  Brewer, himself, defendants McNulty and the Board knew that Brewer was not Riffing himself.  McNulty's knowledge is evident because he simply rehired Brewer on or about July 5, 2018 without a posting, an opportunity for competition for the position, and at an exorbitant salary which the Board had already decided to cut. McNulty did not consider the three African American Program Administrators for the position.  Each plaintiff was qualified for the position awarded to Brewer.

Defendant McNulty's bad faith and racial actions are reflected in his discussions and written communications with Plaintiffs Beasley, Pride and Townsend. He applauded their work, promised them continued employment and then almost simultaneously denigrated their work by supporting a false reason for their termination. He then rehired Leta Ray despite her lower qualifications than Beasley and Pride for no discernable reason. Although Townsend and Ray were first year employees, there was no legitimate, nondiscriminatory reason that McNulty could use to justify the unfavorable treatment of plaintiffs Beasley, Pride, Townsend and the favorable treatment of Leta Ray.

Defendant McNulty formally took office on July 1, 2018.  His first act was to rehire Brewer.  Brewer advised McNulty to hire one African American person as Program Administrator/Instructional Strategist and another as Deputy Superintendent. McNulty, as the Board had done earlier, rejected Dr. Warren, the Assistant Superintendent for Equity and Pupil Services and former Interim Superintendent Warren, as the Deputy Superintendent.

There were two additional Caucasian employees who worked with the

plaintiffs regarding curriculum, Casey Dailey and Rachel Blackwell.  Each performed

essentially the same duties and work expectations as Plaintiffs Beasley, Pride

and Townsend. They reported, however, to a noncertified, non-educator named Will Reid,

a Caucasian male.[2]   However, they were not affected by Brewer's decision to RIF staff.

Dailey was actually paid from the same source of funds as the African American Program

Administrators. The objective qualifications for the work which Dailey and Blackwell

performed are below those of the three African American Program Administrators.  This

is confirmed by their Arkansas Department of Education certification and by their

respective educational degrees.

32.  In previous years, <u>justification</u> for budget cuts was developed and presented in

writing.  They were generally signed by Dr. Warren, Assistant Superintendent for Equity

and Pupil Services. For the 2018-19 school year budget cuts, Brewer did not present

<u>justification in writing</u> and he expressly informed the Board that the proposed cuts were

arbitrary. Exhibit 12, Excerpt from Brewer testimony on 6/11/18, p.74.

## VI. THE RIF DECISIONS ARE BOTH PRETEXTUAL
## AND RETIALATORY

33.  The Defendants articulated reason for the adverse employment decisions

regarding the African American Program Administrators and the Gifted and Talented

(G/T) Director is that the decision was made "in order to meet the district's need to reduce

expenditures to match available revenue and to more efficiently manage district

resources". (Exhibit 13 – Letter to Plaintiffs directed to be signed by Interim

Superintendent) The reason is pretextual.

34.  First, according to Paul Brewer, neither his recommendation nor the Board's

---

[2] . Brewer had informed the defendant Board that Reid participated in the RIF decision made by him.

action was regarded RIFs because Brewer and McNulty did not make a district wide comparison of employees as required by the Board's RIF policy and state law.  Exhibit 10. Second, neither McNulty nor Brewer defined or set forth the amount of money these cuts would achieve in order to match available revenue and to more efficiently manage district resources.  Third, the decisions of McNulty and Brewer were specifically focused on RIF's of the majority African American Learning Services department which included Plaintiff Shirley. Fourth, the RIF was opposed by the Interim Superintendent, Dr. Warren because: a) normal attrition would achieve the proposed amount of budget cuts; b) there was no educational nor financial justification for the specific budget cuts regarding the curriculum staff; c) "no school district anywhere on earth cuts its entire curriculum department"; and d) the positions were critical to the implementation the education components of Plan 2000 commitments. Fifth, Defendants rehired Brewer notwithstanding the RIF.  Sixth, McNulty promised to reposition plaintiffs Beasley, Pride and Townsend; then he advertised four positions and failed to rehire either of them.

35.   In order to avoid claims of racial discrimination, defendant McNulty hired four African American staff for four of the six positions he created (including the Brewer position) Defendant McNulty thus denigrated the qualifications and worth of plaintiffs Beasley, Pride, Townsend as well as Dr. Warren.

36.   The district has a long-standing policy, practice, custom and usage of promoting employees from within the district before it opens the positions to outside applicants.  It did not follow its pre-existing policy, practice, custom and usage when it refused to employ Warren, Beasley, Pride and Townsend; and to reinstate Shirley to a 12-month administrative or G/T position.  Each was qualified for each position that

Defendant McNulty chose to fill with outside the district applicants.

## THE INTENT STANDARD OF PROOF SHOULD NOT APPLY

37. On May 9, 2017, the Defendant school district, through Superintendent Jerry Guess and district counsel Allen Roberts, submitted to the Court for approval a staffing agreement which would allow declaration of unitary status in that area of Plan 2000. The agreement was approved by Intervenors counsel.   While the agreement was pending for Court approval, board members Remele, Keller and Gillen decided that they would remove Guess because of the stipulation regarding staffing and the Roberts' letter and because they were hostile to further negotiations regarding related matters which kept the district under court supervision. See Exhibits 14 and 15.  The Court's Order approving the staffing stipulation was entered on June 14, 2017.  Defendant Board terminated Guess and Roberts on July 18, 2017.

38. The Court had consistently admonished the parties to reach agreements regarding issues about Plan 2000 which remain under court supervision.  The Court emphasized the importance of voluntary agreements when it directed monthly meetings between the parties and their counsel.

39. Defendant Board was aware of the court directed monthly meetings being regularly held between the parties. The school district counsel regularly made reports to the Court in public sessions where school board members were present.  The reasons given for terminating Roberts and Guess are therefore retaliatory.

40. On July 13, 2017, counsel for the Little Rock School District with the agreement of other counsel herein, filed a Motion for Continuance in Covington, et al. v Key, et al.  The purpose of the motion was to allow a brief period for them to explore

further discussions for overall resolution of the court related issues between the parties. Exhibit 16.

41. Upon receipt of an email from a constituent on July 15, 2017, Board member Eli Keller immediately rallied Board members to an emergency board meeting on July 18, 2017, the subject of which was the continued employment of counsel Allen Roberts and Superintendent Guess. Exhibits 17 and 18. In the executive session, Dr. Guess was implored to summarily terminate Roberts or possibly terminated himself. In the public session, the Board terminated Roberts and gave Dr. Guess the option of continuing as Superintendent but only in the event that he utilized other counsel and did not pursue the commitments of the Roberts letter. When Guess declined, he was terminated for cause. By termination of Guess and Roberts for cause related to compliance with Plan 2000 and the Roberts' letter, defendant Board effectively rescinded the administrative commitments that Guess had made during the regular meetings between the parties as reflected in the Roberts' Letter of May 12, 2017. By rejecting the administrative commitments of the Roberts letter, and by Guess and Roberts, defendant Board effectively violated its own staffing agreements and representations to the Court. The defendant Board's terminations of Guess and Roberts and its administrative refusal to allow continuance of the committed interventions regarding personnel, defendant Board engaged in actions which had racial impact and direct racial impact upon the plaintiffs specifically. All of the recommendations by Guess as reflected in the Roberts' letter were discontinued. Dr. Warren, instead of being elevated was diminished.

42. The Court is asked to conclude that because of the defendant school board's decision to retreat from the commitments of the stipulation and for administrative

actions which were made by Dr. Guess in the Allen letter, the Board's conduct must be held to have been in bad faith.  Such bad faith compliance warrants rescission of the Court's Staffing Order entered on June 14, 2017.  Plaintiffs submit that because of defendant Board's bad faith with respect to the staffing submissions and its treatment of Guess and Roberts, the defendants should not be allowed to argue that plaintiffs are required to prove intentional discrimination as prerequisite for their relief.

### DEFENDANTS VIOLATED THE DUE PROCESS AND EQUAL PROTECTION RIGHTS OF PLAINTIFFS AFTER TERMINATING THEM AND THEN NEGLECTING TO RECALL THEM IN JULY, 2018

43.  Pursuant to notice by Brewer and notice directed by the Defendant Board, Plaintiffs were given verbal and written notice that they were being reduced in force (RIF-ED).  In July, 2018, the PCSSD decided to fill the positions which plaintiffs Beasley, Pride and Townsend held with persons outside the district or with less experience within the district who applied. The positions were given the Title of Instructional Strategist. The Instructional Strategist and Program Administrator duties were basically the same. There was no salary for Instructional Strategist.  By changing the title to Instructional Strategist, defendants sought to circumvent their Reduction in Force policy (RIF).  The RIF policy essentially states that positions RIF'ed should not be filled with less experienced persons whether inside or outside the district.  The justification for the RIF was related to a shortage of revenue to fund the positions. The filling of Program Administrator vacancies with a new title of Instructional Strategist is evident that shortage of revenues was a pretext for the termination of Beasley, Pride and Townsend.

### THE FUNDS FROM WHICH PLAINTIFFS PROGRAM ADMINISTRATORS WERE PAID WERE RESTRICTED

44.  The funds from which plaintiff program administrators were paid

were restricted. Defendant board members are obliged to use restricted funds in

compliance with the restrictions imposed. Defendants argue that they were unrestricted.

Exhibit 8, the preliminary State Aid Notice, lines 20 and 33 demonstrate that the source

of funds from which plaintiffs are paid are NSL state funds which are restricted.

45.   Paul Brewer and defendant Board gave verbal and written notice to

plaintiffs that they were being RIF-ed.  In July 2018, PCSSD decided to fill positions

which were formerly held by plaintiffs Beasley, Pride, and Townsend new persons rather

to afford recall rights to the plaintiffs.  The new job title for two of the positions was

Instructional Strategist. It was essentially the same position as the Program

Administrator position. Exhibits 19 and 20 (old and new job descriptions).  The new

position is not on the salary schedule and has no historical significance to Learning

Services.  Plaintiffs contend that the defendants have violated the district's RIF Policy in

that their former positions should first have been offered to them and should not be filled

with lesser experienced persons from either inside or outside the district. The

justification for the RIF was related to a shortage of revenues to fund the positions;

therefore, the position now asserted is pretextual, follows no sense of logic and is not

stated in policy or allocations.

## DEFENDANTS ACTIONS VIOLATE THE PROVISIONS
## OF TITLE VII OF CIVIL RIGHTS ACT OF1964

46. Title VII of the Civil Rights Act of 1964 prohibits the Defendants from

discriminating against employees on the basis of race, color, gender, and certain other

attributes.  The Defendant school district is an employer as defined by the Act. Title VII

forbids discrimination in any aspect of employment such as hiring, firing, assignment,

transfer, lay-off, recall, or enabling a hostile work environment among other things.

47. On or about July 15, 2018, plaintiffs each gave notice to the Equal Employment Opportunity Commission (EEOC) that they wished to file complaints of discrimination due to race and a hostile work environment because of defendants' actions in giving them notice of termination or non-renewal or loss of pay and then taking adverse action against each of them on or about June 11, 2018. Plaintiffs incorporate their EEOC claims into this complaint with the expectation that upon receipt of Notices of Right to Sue, they will amend this complaint. They seek relief as provided by Title VII that is equitable and for damages for each of them in the amount of $300,000.00 as allowed by the statute.

## DEFENDANTS' CONDUCT VIOLATES THE CIVIL RIGHTS ACT OF 1866 AND 42 U.S.C. § 1983

48. 42 U.S.C. § 1983 requires that each person who under color of law, custom, policy or practice subjects any citizen of the United States to the deprivation of rights, privileges or immunities secured by the 14th Amendment shall be liable to injured parties in an action at law suit in equity or other proper proceeding for redress. Defendants actions herein, as set forth infra, were taken under color of law to the detriment of plaintiffs. Plaintiffs were entitled to equal, nondiscriminatory treatment with respect to the terms and conditions of their employment. That included their right not only to enter into contracts but to be able to enjoy the benefits of the contract without defendants arbitrarily and discriminatorily adversely impacting same. Defendants Board of Directors of the PCSSD and Charles McNulty acted in concert with employees of the district to deprive plaintiffs of employment for no legitimate nondiscriminatory reason and for reasons which were otherwise admitted to be arbitrary and discriminatory. Defendants

thus created and continued a work environment hostile to plaintiffs due to their race or color and because they were working to fulfill the requirements of a federal court decree known as Plan 2000 entered by the United States District Court for the Eastern District of Arkansas.  Exhibit 12, p. 74 – Testimony of Brewer regarding the arbitrary decisions he made that adversely affected the plaintiffs.

## DEFENDANTS' CONDUCT VIOLATES THE ARKANSAS FAIR TEACHER DISMISSAL ACT

49. In March, 2018, Defendant Board directed a subordinate employee to the Superintendent of Schools, Paul Brewer, to make recommendations to it for budget cuts and to do so in consultation with a non- employee of the school district.  It was the role of the Superintendent to make the budget cut recommendations upon her considered judgment.  She declined to make any cuts because they were not justified by reasons of financial feasibility and educationally sound reasons. Defendant Board, on April 28, 2018, directed the Superintendent to sign letter of nonrenewal and/or termination.  Under duress, the Superintendent did so.  Defendant Board thus performed an administrative action and then on June 11, 2018, made judgments regarding their own actions. Defendant Board thus deprived the plaintiffs of a fair tribunal to consider the reasons proffered for their nonrenewal, reduction in force or termination.

50. Defendant Board actions violated its own policies and state law. Arkansas Code Annotated § 16-17-1501, et seq.  Defendant Board aggravated its decision by acting without information and for reasons that were false.

51. Defendant Board's decision reached in executive session was on a tie 3-3 vote.  When the Board voted in public, its vote was so confusing until there was no decision regarding whether the plaintiffs were discharged. The Board then adjourned.

Several board members left the meeting.  The Board members then met with Jay

Bequette, counsel for the school district, during the hearing, outside the presence of

plaintiffs' counsel.  A board member then moved to rescind the adjournment because

there was uncertainty about what happened regarding the 3-3 vote.  A 3-3 vote would

have left each plaintiff employed.

## CONCLUSION

52.  The plaintiffs have each been deprived of due process, equal protection of the

laws, rights secured to them by 42 U.S.C. § 2000e, et. seq., rights secured to them by the

Arkansas Fair Teacher Dismissal Act, A.CA. § 6-17-1501, et. seq. and of rights secured to

them by the Defendant Board policies, practices, customs and usages as reflected in their

contract of employment.   Defendant Board directed the adverse actions challenged

herein and was responsible for the racial and arbitrary decisions made by its Board

members and its agents including Paul Brewer, Dr. McNulty and Dr. Janice Warren.

53.  Defendant McNulty, though not authorized by law made personnel decisions

which adversely affected the plaintiffs' continued employment and treatment before his

authority began on July 1, 2018. Agent Paul Brewer made arbitrary decisions where he

sought out African American staff who performing necessary work required by Plan 2000

to be cut for no legitimate, nondiscriminatory reason. Defendants Board and McNulty

provided false public reasons which were pretextual in their judgment to remove

plaintiffs from employment on the same terms and conditions as they endured during the

2017-18 school year.

Defendants are well informed of the rights of these employees because they have

engaged in frequent litigation over many of the same issues. The rights of plaintiffs to be

free from the treatment perpetrated upon them by the defendants are so well known as to be beyond cavil.   Plaintiff have no effective recourse for redress of their grievances other than this action for relief as provided by law and equity.  Any other course of action would be so costly, time consuming and uncertain as to deny effective relief.

54. The aforestated claims of the plaintiffs establish that defendants have deprived plaintiffs of well-known and well-established rights for which plaintiffs are entitled to relief pursuant to the Civil Rights Acts of 1866 and 1964, the Equal Protection Due Process Clauses of the 14th Amendment, the Arkansas Fair Teacher Dismissal Act, and the policies of the school district regarding RIF's which were incorporated pursuant to Plaintiffs' contracts of employment with the school district.   The rights of plaintiffs to be free from discrimination due to race and to be otherwise treated in accord with the laws and policies cited herein are so well known and well established that defendants may not assert immunity of any kind.

55. Each plaintiff is claiming "make whole" relief including back wages, restoration benefits lost compensatory damages, punitive damages and an injunction forbidding defendants from engaging in discriminatory and/or retaliatory conduct in the future due to their race or color or for having engaged in protected activity related to or arising out of the facts alleged herein.

WHEREFORE, plaintiffs respectfully pray that this matter be set for early hearing and that the Court thereafter enter judgment on their behalf individually for declaratory, equitable and injunctive relief which requires their reinstatement and forbids retaliation for having engaged in protected activity.

They further pray for compensatory damages in the amount of $300,000 each as

26

provided by Title VII of the 1964 Civil Rights Act in order to compensate them for their damages suffered because of defendants arbitrary and otherwise unlawful conduct. Plaintiffs further pray for punitive damages because of the exceeding and reckless disregard of plaintiffs' reputation, standing in the community, loss of employment and because of the actual intent of several identifiable defendants and agent Brewer to cause each of them harm because of race and/or because each of them opposed the defendants' actions which defendants directed be taken in order to harm the plaintiffs. The damages being sought under 42 U.S.C. §1983 are $500,000 for each plaintiff.  Plaintiffs seek equitable relief which consists of back pay and benefits lost including but not limited to insurance, sick and vacation leave, retirement benefits, educational leave and any other benefits offered to district employees for the purpose of making them more competent in their profession.

.       Finally, plaintiffs pray for their costs, including but not limited to expert witness fees, attorneys' fees pursuant to 42 U. S. C. § 1988 and such other alternative or further relief as the court may deem necessary in order to vindicate the civil rights of each plaintiff.

Respectfully submitted,


Shawn G. Childs
Shawn G. Childs, Bar No. 99058
John W. Walker, P.A.
Email: sgchilds@gabrielmail.com
1723 Broadway
Little Rock, Arkansas 72206
501-374-3758(telephone)
501-374-4187 (facsimile)