IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JENNIFER BEASLEY, DR. KIFFANY PRIDE,
LAURA SHIRLEY, AND NICOLE TOWNSEND                                    PLAINTIFFS

v.                                      No. 4:18-cv-00508-DPM

DR. CHARLES MCNULTY, in his official capacity
as Superintendent of Schools of the Pulaski County
Special School District; the BOARD OF DIRECTORS
of the Pulaski County Special School District; and the
PULASKI COUNTY SPECIAL SCHOOL DISTRICT,
a public body corporate                                              DEFENDANTS

## MEMORANDUM BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.

### INTRODUCTION

This Memorandum Brief is submitted in support of the Motion for Summary Judgment ("Motion") filed by Defendants, Dr. Charles McNulty, the Board of Directors of the Pulaski County Special School District, and the Pulaski County Special School District ("PCSSD" or "District"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons discussed herein, Defendants are entitled to summary judgment as a matter of law on all of Plaintiffs' claims raised in their Second Amended Complaint, ECF Doc. No. 22.

### II.

### STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment if the moving party has established its right to a judgment with such clarity as to leave no room for controversy, and the non-moving party is not entitled to recover under any discernable circumstances. *See LeCroy v. Dean Witter Reynolds, Inc.*, 585 F. Supp. 753 (D.C. Ark. 1984).

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."). The non-moving party may not rest on mere allegations or denials of his pleading but must come forward with 'specific facts showing a genuine issue for trial. *Id*. at 587. "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co*., 49 F.3d 399, 401 (8th Cir. 1995).

## III.

## FACTUAL AND PROCEDURAL BACKGROUND

This is an employment discrimination action. Each Plaintiff brings suit against PCSSD pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the Equal Protection Clause of the Fourteenth Amendment, as enforced by 42 U.S.C. § 1983 ("§ 1983"), and the Arkansas Teacher Fair Dismissal Act ("ATFDA"), Ark. Code Ann. § 16-17-1501, *et seq.* Plaintiff Shirley also asserts claims of age discrimination and retaliation.[1] *Id.* at ¶ 15. Plaintiffs Beasley, Pride, and Townsend were all Program Administrators for PCSSD. *See* Second Amended Complaint, ECF

---

[1] Shirley only raises her age and retaliation claims in paragraph 15, but otherwise provides no support for the claims. To the extent Shirley has sufficiently raised the claims, they are analyzed under the *McDonnel Douglas* framework thoroughly addressed herein. *See Kohrt v. Midamerican Energy Co*., 364 F.3d 894 (8th Cir. 2004).

Doc. 22 at ¶¶ 19, 20, and 22.    Plaintiff Shirley is still employed with PCSSD in the same position of Director of Gifted and Talented Education, but under a reduced contract length.    *Id.* at ¶ 21.

Plaintiffs' Complaint is replete with references to PCSSD's long running desegregation case and PCSSD's responsibilities under Plan 2000, which is well-known to this Court and is the subject of the upcoming trial before this Court.    Plaintiffs also intertwine references to PCSSD's termination of its previous superintendent, Dr. Jerry Guess, and PCSSD's past lawyers, as well as allegations of misdeeds by past employees and board members.    *Id.* at ¶ 1.    Plaintiffs even take swipes at the PCSSD school board's decision not to hire Dr. Janice Warren as its superintendent in April of 2018, but instead its decision to choose Dr. Charles McNulty, who still serves admirably in the role today.    All this is simply a red herring to distract from the real issues before this Court – the non-renewal of Plaintiffs' contracts in 2018.    PCSSD is on trial as to Plaintiffs in this case only, and nothing more.    Paragraphs one through five of Plaintiffs' Second Amended Complaint can summarily be disregarded by the Court as having nothing to do with Plaintiffs and the adverse employment action against them.    The focus of this case is about the school board's vote on June 11, 2018, to non-renew the contracts of Plaintiffs and PCSSD's efforts thereafter to rehire staff under a new superintendent and refocused staff.

Prior to the approval of budget allocations for 2018-19, PCSSD sought to greatly reduce its budget.    *Id.* at ¶ 24.    Upon review, PCSSD discovered that attrition would not sufficiently account for the amount of reduction needed.    *See* Answer to Second Amended Complaint, ECF Doc. 25 at ¶ 6.    The need to reduce PCSSD's budget for 2018-2019 was legitimate and necessary. At the administrative hearing for Plaintiffs held on June 11, 2018, under the Arkansas Teacher Fair Dismissal Act, PCSSD's chief financial officer, Denise Palmer, testified regarding the Preliminary Budget Projection for 2018-2019.    *See* Preliminary Budget Projection 2018-2019, attached to

PCSSD's Motion for Summary Judgment as <u>Exhibit 1</u>.   The projection showed that expenses for 2018-2019 were anticipated to exceed revenue by $7,617,518.36.  *Id.*   This deficient spending would place PCSSD's ending fund balance at 7.37%.   *Id*.   Ms. Palmer testified that this deficit spending would result in a declining fund balance, which could cause PCSSD to re-enter fiscal distress, a classification PCSSD had already overcome years prior when under state control.   *See* testimony of Denise Palmer from administrative hearing, attached to PCSSD's Motion for Summary Judgment as <u>Exhibit 2</u>.

Paul Brewer, Chief Executive Officer in 2018-2019, testified that he was part of the 2018-2019 budget allocations to the PCSSD Board in April of 2018.   *See* Deposition of Paul Brewer, pp 5-6, attached to PCSSD's Motion for Summary Judgment as <u>Exhibit 3</u>.   *See also* Second Amended Complaint, ECF Doc. 22, ¶ 5, confirming the board meetings were April 10 and 19 of 2019.   Brewer testified that the allocations, as presented, did not satisfy the Board, and Brewer and Dr. Warren, interim superintendent, were instructed to go back to the drawing board and look for budget reductions that could be made in the central office staff.   <u>Ex. 3</u> at p. 6. Ultimately, administrative positions in multiple departments were non-renewed.   Some positions, such as Ms. Linda Goodwin, interim director of elementary education, and Dr. John Tackett, director of secondary education, were eliminated through attrition.   *Id*. at p. 29.   Goodwin's position was absorbed into the role of deputy superintendent while Dr. McNulty, upon his start date, took over secondary education duties in his role as Superintendent.   *Id*. at p. 84.   Other administrators in addition to Plaintiffs had their contracts reduced, such as athletic director, Danny Ebbs (white male), whose contract was reduced by $10,000.00.   Likewise, Brewer's position as Chief Executive Officer was reduced to interim assistant superintendent at a reduction of $20,000.00.   *Id*. at 33.

Ultimately, to make additional cost savings, it was decided that budget reductions were necessary in the learning services department.   *See* ECF Doc. 22. at ¶ 24.   The Program Administrators for this department consisted of three African American employees (Plaintiffs Beasley, Pride and Townsend) and two white employees.   *Id*.   All five employees were non-renewed for the 2018-19 year, bringing substantial savings to PCSSD.   Interim Superintendent Dr. Janice Warren agreed to and recommended the non-renewals of Plaintiffs to the school board by signing the April 27, 2018 non-renewal letters, providing notice to each Plaintiff that their contracts would be non-renewed for the 2018-2019 school year, consistent with the Arkansas Teacher Fair Dismissal Act.   *See* Notice of Non-renewal Letters for Plaintiffs, attached to PCSSD's Motion for Summary Judgment as <u>Exhibit 4</u>. These letters explained that Plaintiffs' positions as district curriculum Program Administrators were being eliminated to reduce expenditures, and Plaintiff Shirley's contract was being reduced in days.   *See* Second Amended Complaint at ¶ 28.   These non-renewals were not the result of a reduction in force, as defined by PCSSD's policies and procedures, but were complete non-renewals of the positions, or reduction of contract days in the case of Plaintiff Shirley.   *See* testimony of Paul Brewer from administrative hearing, p. 86, attached to PCSSD's Motion for Summary Judgment as <u>Exhibit 5</u>.

The goal of these changes in the learning services department was to combine some positions and downgrade other positions to save costs.   *See* <u>Ex. 3</u>, Deposition of Paul Brewer, p. 77.   From the five Program Administrator positions eliminated for 2018-19, two new Instructional Specialist positions were created and filled by Bobbette Ray (white), who was previously a Program Administrator, and Dr. Laura Strickland (African American), who was not previously employed with PCSSD.   *Id*. at 85.   Of the three plaintiffs who were Program Administrators, only Plaintiff Townsend applied for one of the new Instructional Specialist

positions, which she did not receive.   *See* Deposition of Plaintiff Townsend, pp. 22-23, attached to PCSSD's Motion for Summary Judgment as <u>Exhibit 6</u>.   Plaintiffs Pride and Beasley admitted they did not apply for the newly created Instructional Specialist positions.   *See* Deposition of Pride at p. 31 and Deposition of Beasley at pp. 36-37, attached to PCSSD's Motion for Summary Judgment as <u>Exhibits 7 and 8</u>.

## IV.

## ARGUMENT AND AUTHORITY

**A.**   **Summary Judgment on Plaintiffs' Title VII Claims Is Proper Where Plaintiffs Failed to Establish a Prima Facie Case of Racial Discrimination and Proffered Insufficient Proof to Overcome PCSSD's Legitimate, Nondiscriminatory Reasons for the Adverse Employment Action.**

Title VII prohibits unlawful discrimination and retaliation practices by employers. 42 U.S.C. § 2000e-2(a).   Absent direct evidence of discriminatory intent, Plaintiffs' discrimination claims are analyzed under the familiar burden-shifting test set out in the *McDonnell Douglas* line of cases.   *See Lang v. Star Herald*, 107 F.3d 1308, 1311 (8th Cir. 1996); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).   This framework consists of three requirements: (1) plaintiff must first establish a prima facie case of discrimination; (2) defendant must rebut that prima facie case by proffering a legitimate, nondiscriminatory explanation; then finally, (3) plaintiff must proffer evidence that defendant's explanation is a pretext for discrimination.   *Cherry v. Ritenour School District*, 361 F.3d 474, 478 (8th Cir. 2004). Plaintiffs' claims fail at both the first and the final stages of this analysis.

      1.    <u>Plaintiffs Beasley, Pride, and Townsend failed to establish a prima facie case of discrimination where white Program Administrators were nonrenewed alongside these Plaintiffs and non-white staff were hired for new positions created in place of the former positions.</u>

To establish a prima facie case of race discrimination, a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) circumstances exist which give rise to an inference of discrimination. *Id*. At issue with all Plaintiffs is element four, and whether they can present evidence of circumstances giving rise to an inference of discrimination. To determine if an inference of discrimination exists, the familiar *McDonnell Douglas* analysis applies the same four elements, but also determines whether non-members of the plaintiff's class were treated differently. *McDonnell Douglas Corp.*, 411 U.S. at 802 (1973). A plaintiff can also satisfy the fourth element by providing other evidence that the employer terminated her because of her race. *Mitchell v. City of Dumas*, 187 F. App'x 666, 668-69 (8th Cir. 2006). But absent evidence of unlawful discrimination, courts "may not second-guess employers' business decision." *Robinson v. American Red Cross*, 753 F.3d 749, 754 (8th Cir. 2014) (emphasis added).

The case of *Robinson* exposes Plaintiffs' inability to establish a prima facie case upon the undisputed facts here. In *Robinson*, the Eighth Circuit Court of Appeals upheld summary judgment granted to defendant employer, where the plaintiff alleged that she was suspended and terminated due to her race (African American), as she failed to prove that other similarly situated employees were treated differently. *Id*. The Court pointed out that, rather than providing white employees with favorable treatment, the employer suspended/disciplined at least two white employees and terminated at least ten other white employees around the same time plaintiff Robinson was suspended/terminated. *Id*. at 755. Furthermore, the employer filled her position with a non-white employee. *Id*. The Eighth Circuit found these facts determinative in ruling that Robinson failed to establish a prima facie case of racial discrimination. *Id.* at 756.

The facts before this Court mirror those in *Robinson* in multiple ways.   Plaintiffs Beasley, Pride and Townsend were not the only employees non-renewed.   All Program Administrators were eliminated, and two were white.   *See* Second Amended Complaint, ECF Doc. 22 at ¶ 24. Additionally, as Plaintiffs have admitted, four of the six positions filled after Plaintiffs' contracts were nonrenewed were filled by African Americans.   *Id.* at ¶ 35.

As in *Robinson*, Plaintiffs here have failed to unveil evidence that illuminates even an inference of discrimination.   In the same paragraph where Plaintiffs recognize the hiring of members of their own race, they lament the "denigrat[ion]" of their personal "qualifications and worth[.]"   This paragraph brings to light the real nature of these complaints.   They do not arise from persons who have faced racial discrimination.   They come from persons who feel their worth as individuals generally, not <u>African</u> <u>American</u> individuals, specifically, has been underappreciated.   Title VII was created to protect persons against discrimination, not injuries to personal pride.   Where white Program Administrators faced the same adverse employment actions as Plaintiffs, and African Americans were hired for the positions created after Plaintiffs' non-renewals, there is simply no prima facie case of discrimination here.

2. <u>Plaintiff Shirley failed to establish a prima facie case of racial discrimination where she denied benefits offered to her to make up for her contract reduction.</u>

As discussed above, to establish a prima facie case, Plaintiff Shirley must provide evidence giving rise to an inference of discrimination.   *Cherry*, 361 F.3d at 478.   The undisputed facts here prevent her from being able to do so.   For the same reasons the other Plaintiffs' contracts were nonrenewed, Shirley's contract was reduced from twelve months to eleven months, cutting her pay by around $10,000.00.   *See* Second Amended Complaint at ¶ 11.   But, she was offered an additional stipend to make up for this reduction, which she turned down.   *See* Answer to

Second Amended Complaint at ¶ 9.   Where Shirley was offered an additional opportunity to make up for the losses she incurred during budget cuts, but rejected the opportunity afforded her, she cannot now claim that the pay reduction imposed by her current eleven-month contract is the result of racial discrimination.

> 3.   PCSSD had a legitimate, nondiscriminatory reason for nonrenewing each of Plaintiffs' contracts.

If Plaintiffs can establish a prima facie case, a legal presumption of unlawful discrimination arises and the burden shifts to the employer to "produce evidence of a legitimate, nondiscriminatory reason for [the retaliatory action]."   *Stuart v. GMC*, 217 F.3d 621, 634 (8th Cir. 2000).   In order to articulate a legitimate, nondiscriminatory business reason, the employer must only present admissible evidence sufficient to raise a genuine factual issue as to whether plaintiff was discriminated against.   *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 256, 101 S. Ct. at 1097, 67 L. Ed. 2d 207 (1981) (plaintiffs retain "the ultimate burden of persuading the court that they have been the victims of intentional discrimination"); *Cherry*, 361 F.3d at 478 ("The Burden on the School District is one of production, not persuasion.").

PCSSD articulated a nondiscriminatory explanation for the non-renewals in each of the Plaintiffs' notice letters, namely the District's need for budget cuts.   *See* Ex. 4, non-renewal letters.   PCSSD's Answer restates that Plaintiffs' contracts were nonrenewed because attrition would not sufficiently meet budget objectives.   *See* Answer to Second Amended Complaint, ECF Doc. 25 at ¶ 6.   PCSSD presented evidence through its chief financial officer that the District was going to have a $7,617,518.36 deficit for 2018-19 without additional budget cuts, which would result in an ending fund balance at 7.37%.   *See* Ex. 2.

Having articulated a legitimate, nondiscriminatory reason for the adverse employment action, PCSSD has met its burden.

4. <u>Plaintiffs have all failed to demonstrate that PCSSD's proffered explanation is a pretext for racial discrimination</u>.

If the employer carries its burden, the legal presumption of unlawful discrimination disappears, and plaintiffs must prove that the defendant's explanation is a pretext for unlawful discrimination. *Cherry*, 361 F.3d at 478. At this stage, plaintiffs can survive summary judgment only if they produce sufficient admissible evidence from which a rational fact finder could disbelieve the employer's proffered reason and find that the company's true motivation for its conduct was intentional discrimination. *Lang*, 107 F.3d at 1311. The most common method of proving pretext is a showing that "similarly situated persons of a different race . . . received more favorable treatment." *Cherry*, 361 F.3d at 479 (internal quotations omitted). Plaintiffs' burden at this stage is greater than the minimal evidence needed to make a prima facie case at the first stage in the burden-shifting analysis. *Landon v. Northwest Airlines*, 72 F.3d 620, 625 (8th Cir. 1995) (abrogated in part on other grounds by *Togerson v. City of Rochester*, 643 F.3d 1031).

Even if Plaintiffs' proffered evidence establishes a prima facie case of discrimination, it falls far short of proving that PCSSD's legitimate, nondiscriminatory explanation is a pretext for discrimination. As stated above, Plaintiffs cannot show that PCSSD treated white employees more favorably than the African American Plaintiffs, where two white Program Administrators were also nonrenewed and two-thirds of the new hires were African American. The burden has passed to Plaintiffs to provide evidence that PCSSD's explanation is pretextual, and they have not provided such evidence.

Based on the undisputed facts here, each Plaintiff has failed to establish a prima facie case of racial discrimination.  PCSSD explained that its decisions were based on the need for budget cuts, which could not be sufficiently met through attrition, and all Program Administrators were cut, regardless of race.  The burden is now on Plaintiffs to prove that this explanation is pretextual, as nothing before this Court suggests pretext.

**B.      No Genuine Issue of Material Fact Exists Regarding Plaintiffs' § 1983 Claims, Where White Employees Suffered the Same Adverse Employment Actions as Did Plaintiffs.**

Plaintiffs may sue a state government employer for violations of the Fourteenth Amendment through § 1983.  *See Henley v. Brown*, 686 F.3d 634, 643 (8th Cir. 2012).  The Eighth Circuit Court of Appeals has held that, in the employment discrimination context, the elements of a § 1983 equal protection claim are the same as those of a Title VII claim, *see, e.g., Richmond v. Board of Regents*, 957 F.2d 595, 598 (8th Cir. 1992).  Here, Plaintiffs' § 1983 claims fail for the same reasons as do their Title VII claims.

If this Court were to analyze the equal protection claim outside of the context of a Title VII claim, a plaintiff must demonstrate, minimally, that the governmental body has failed to treat similarly-situated persons alike.  *See Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985).  As previously discussed in detail, Plaintiffs here cannot demonstrate that they were treated dissimilarly from their white co-workers.  Again, <u>all</u> Program Administrators were non-renewed, regardless of their race.  *See* Second Amended Complaint at ¶ 22.  In Plaintiff Shirley's case, she was actually offered an additional stipend to make up for the reduction in her contract, which she refused.  *Id.* at ¶ 11.  Even if this Court analyzes Plaintiffs' equal protection claims outside the Title VII context, these facts leave no room to question whether Plaintiffs were treated dissimilarly from other employees of a different race.

**C.      PCSSD Strictly Followed the Requirements of the Arkansas Teacher Fair Dismissal Act.**

The Arkansas Teacher Fair Dismissal Act ("ATFDA") requires that the termination or non-renewal of a teacher must meet a standard of just and reasonable cause, and that a school district must substantially comply with the ATFDA and its personnel policies.   *See* Ark. Code Ann. § 6-17-1503.   The ATFDA does not confer lifetime appointment of teachers.   *Id.*   The ATFDA allows a school district to non-renew a teacher for incompetent performance, conduct which materially interferes with the continued performance of the teacher's duties, repeated or material neglect of duty, or other just and reasonable cause.   *See* Ark. Code Ann. § 6-17-1507.

Upon review by the circuit court, the question of whether a school district has substantially complied with the ATFDA is a question of law.   *See Kasinger v. East End School Dist.*, 2011 Ark. App. 595, 385 S.W.3d 885 (2011).   "The decision to terminate a teacher pursuant to the TFDA is a matter of discretion of the school board, and the reviewing court cannot substitute its opinion for that of the school board in the absence of an abuse of that discretion."   *Olsen v. E.End Sch. Dist.*, 84 Ark. App. 439, 444 (2004).   The decision to terminate or not to renew a teacher's contract is a matter within the discretion of the school board, and a reviewing court cannot substitute its opinion for that of the board in the absence of an abuse of discretion by the board. *See Leola School Dist. v. McMahon*, 289 Ark. 496, 712 S.W.2d 903 (1986) and *Caldwell v. Blytheville Sch. Dist.*, 23 Ark. App. 159, 164 (1988).

On April 27, 2018, Dr. Warren, the interim superintendent at the time, signed and sent letters notifying each Plaintiff of the decision not to renew their contracts.   *See* Exhibit 4 (non-renewal letters).   These notices were provided in writing before the mandated May 1 deadline and clearly outlined the just and reasonable cause for the non-renewals.   PCSSD presented

evidence to support the non-renewals, and Plaintiffs were given a hearing before the PCSSD Board.

Plaintiffs attempt to undermine each of these reasons and claim they do not withstand scrutiny.   This Court must give deference to the fact finder, the school board, on matters of credibility.   *See Timpani v. Lakeside Sch. Dist.*, 2011 Ark. App. 668, at 15, 386 S.W.3d 588, 597. Furthermore, this Court should not substitute its judgment for that of the Board's.   *See Caldwell*, 23 Ark. App. At 164.   Plaintiffs raise no legal arguments as to any procedural error, only that they disagree with the Board's decision.   Plaintiffs' disagreement with the reasons is simply not enough to overcome the scrutiny imposed by ATFDA.

### D.     Non-renewal of Plaintiffs' Contracts Were Not the Result of a Reduction in Force, so PCSSD Did Not Breach Its Contract with Plaintiffs by Not Following RIF Procedures.

To state a claim for breach of contract under Arkansas law, employees need to prove, in part, that their employer breached the terms of their employment contract.   *Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 618 (8th Cir. 2015).   Traditional contract principles apply to teacher-school employment contracts.   *Helena-West Helena School Dist. #2 v. Randall*, 32 Ark. App. 50, 53-54, 796 S.W.2d 586, 587 (1990).

Although Plaintiff's complaint shrouds this issue in dense discussions regarding PCSSD's Reduction in Force ("RIF") policy, that policy is irrelevant to the case at bar, as Plaintiffs' contracts were not terminated as a reduction in force.   *See* Notice of Non-renewal Letters and Deposition of Brewer, Ex. 3, at p. 86 (Brewer's hearing testimony).   They were simply nonrenewed for other reasons.   *Id.*   Plaintiffs' claims rely on the proposition that they were RIF-ed and, thus, PCSSD breached their employment contracts by failing to follow the RIF procedures.   That argument falls apart upon determination that Plaintiffs' non-renewals were not a result of a reduction in

13

force.   Absent effectuation of a reduction in force, PCSSD cannot have been expected to follow the RIF procedures in hiring/assigning employees.   As such, PCSSD did not breach its employment contracts with Plaintiffs when it did not follow RIF procedures, as such were not required in a non-renewal.

  **E.**  **Plaintiff Shirley's Contract Was Not Amended as the Result of a Reduction in Force, so She Cannot Allege Retaliation for PCSSD's Failure to Follow RIF Procedures.**

   To make a prima facie case of retaliation under Title VII, a plaintiff must present evidence demonstrating: (1) she engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) the materially adverse action was causally linked to the protected conduct.   *Brown v. City of Jacksonville*, 711 F.3d 883, 893 (8th Cir. 2013).   Upon a prima facie showing, a defendant then has the opportunity to articulate a legitimate, non-retaliatory reason for the adverse action.   *Id*.   It generally takes more than a temporal connection between the protected conduct and the adverse employment action at issue to establish a prima facie case of retaliation.   *Griffith v. City of Des Moines*, 387 F.3d 733, 738 (8th Cir. 2004).   The plaintiff must also show that her engagement in protected conduct was a determinative, not merely a motivating, factor causing the employment decision.   *Robinson*, 753 F.3d at 756.

   Plaintiff Shirley claims that she was retaliated against, after she filed the original complaint in this case, by being refused the chance to exercise "bumping rights" given to those who have been subjected to reduction in force.   *See* Second Amended Complaint at ¶ 11 and 15.   The problem here, as with the breach of contract claim, is that Shirley's reduced contract was not the result of a reduction in force, but was the product of a non-renewal.   *See* Ex. 5, Administrative Hearing Testimony of Brewer, p. 86.   Shirley attempts to use PCSSD's failure to follow the RIF procedure as evidence connecting (1) the denial of her request to exercise "bumping rights" to

secure a different job position to (2) the original complaint she filed here.     Because the RIF policy was never in effect and did not apply to Shirley, there is no causal connection between her complaint and the denial of her request to exercise "bumping rights."     Without other evidence connecting the adverse employment action to Shirley's protected conduct, her claim fails to establish even a prima facie case of retaliation.

## **CONCLUSION**

Based upon the foregoing argument and authority, Defendants respectfully submit that their Motion for Summary Judgment should be granted and that the Plaintiffs' Second Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com

By:     **W. Cody Kees**
Jay Bequette, #87012
W. Cody Kees, #2012118