IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JENNIFER BEASLEY, DR. KIFFANY PRIDE,
LAURA SHIRLEY, AND NICOLE TOWNSEND                                    PLAINTIFFS

v.                              No. 4:18-cv-00508-DPM

DR. CHARLES MCNULTY, in his official capacity
as Superintendent of Schools of the Pulaski County
Special School District; the BOARD OF DIRECTORS
of the Pulaski County Special School District; and the
PULASKI COUNTY SPECIAL SCHOOL DISTRICT,
a public body corporate                                               DEFENDANTS


# PLAINTIFFS' BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.   Introduction

Plaintiffs Jennifer Beasley ("Beasley"), Dr. Kiffany Pride ("Pride"), Laura Shirley ("Shirley"), and Nicole Townsend ("Townsend") (collectively "Plaintiffs") filed suit against Dr. Charles McNulty ("McNulty"), the Board of Directors of the Pulaski County Special School District (the "Board"), and the Pulaski County Special School District ("PCSSD") (collectively "Defendants.") They alleged that Defendants created a Reduction-in-Force ("RIF") that was applied in a discriminatory manner based on their race, African American. Plaintiffs contend that Defendants engaged in racial discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment (enforced by 42 U.S.C. § 1983). Shirley asserts that she was also subjected to age discrimination in violation of the Age Discrimination in Employment Act (ADEA) and unlawful retaliation. Plaintiffs also allege that Defendants either nonrenewed or reduced their contracts in contravention of the Arkansas Teacher

1

Fair Dismissal Act. Plaintiffs seeks remedies in the form of back pay, compensatory damages, and attorney's fees and costs.

## II. Factual Background

### A. *Plaintiffs' backgrounds and work on Plan 2000*

Plaintiff Beasley, who possesses a master's degree in education, was employed by the PCSSD from the 2012-13 school year through the end of the 2017-18 school year when her contract was not renewed. She worked as an instructional technology specialist, school improvement specialist, and as a program administrator. *Doc. 22, ¶ 18.*

Plaintiff Pride, who earned a doctorate in education, also began to work at the PCSSD during the 2012-13 school year until her contract was not renewed beyond the 2017-18 school year. She was a program administrator during her entire time at the PCSSD *Doc. 22, ¶ 19.*

Plaintiff Shirley, who has a master's degree in education, has been employed with the PCSSD for over 25 years. She has worked as a teacher, assistant middle school principal, middle school principal, and director of gifted and talented education. In 2018, Defendants reduced her the days in her contract through a partial nonrenewal. She remains employed in the same director's position with the PCSSD. *Doc. 22, ¶ 20.*

Plaintiff Townsend, who earned a master's in business administration, worked for the PCSSD as a program administrator during the 2017-18 school year until her contract was non-renewed. Before her employment at the PCSSD, Townsend had experience as a math teacher, elementary math coach, assistant elementary principal, elementary principal, and high school vice principal. *Doc. 22, ¶ 21.*

For the 2017-18 school year, Dr. Janice Warren served as interim superintendent of the PCSSD. She was tasked to oversee more substantive implementation of the educational

commitments of Plan 2000, which included the Ross Plan. Plaintiffs Beasley, Pride and Townsend were central to and expressly involved in addressing remediation of academic differences between African American and white students. These plaintiffs had the responsibility of aligning curriculum, training staff, and meeting the requirements of the Arkansas Department of Education (ADE) and focused upon enhancing learning and remediating the achievement gap between African American and white students. *Doc. 22, ¶ 7*.

Plaintiff Shirley oversaw and monitored the district's Gifted and Talented (G/T) program. The parties agreed, and this Court approved that the G/T program was unitary. Shirley worked with Plaintiffs Beasley, Pride and Townsend and with Dr. Warren for the purpose of enhancing learning and remediating the achievement gap between African American and Caucasian students. *Doc. 22, ¶ 8*.

B.      *The 2018 PCSSD process for budget cuts*

In early 2018, the Board informed Interim Superintendent Janice Warren that it wanted to make budget cuts for the 2018-19 school year because it anticipated a loss of revenue. Warren responded that expenses could be reduced through attrition of staff rather than eliminating personnel. *Plaintiffs Ex. 1, Transcript of Board Hearing, at 162:14-21*. The Board rejected Warren's method of using attrition to reduce costs for the upcoming year. On April 10, 2018, the Board instructed Executive Director of Human Resources Paul Brewer to develop cuts from within the Curriculum Department of the Central Office. The Board also directed Brewer to consult Defendant McNulty who had recently been hired to be the superintendent for the 2018-19 school year. Warren, who is African American, was shut out of the decision-making process by the Board. Brewer and McNulty are white. *Plaintiff's Ex. 1, Transcript of Board Hearing, at 159:1-25*; and *Plaintiffs' Exhibit. 2, Board Minutes from 4/10/18*. That same month board member Linda Remele

called McNulty after he had been hired and told him that the Board intended to make cuts in the Central Office. *Plaintiffs' Exhibit 6, Depo. of Charles McNulty, at 14:11-15:7*. In a conversation with Brewer, Brewer informed McNulty that the Board had singled out the program administrators for staff cuts. *Id., at 17:20-18:2*. On April 19, 2018, Brewer submitted a certified staff allocation for 2018-19 for the Board to consider. *Plaintiffs' Exhibit 3, Board Minutes from 4/19/18*; and *Plaintiffs' Exhibit 7, Certified Staff Allocations for 2018-19*. The Board approved the list of allocations. *Plaintiffs' Exhibit 3, Board Minutes from 4/19/18*. Upon the direction of the Board and in consultation with McNulty, Brewer drafted letters of non-renewals to Beasley, Pride, and Townsend.

During the board hearing held on June 11, 2018, Brewer testified that his decision regarding which jobs to RIF were arbitrary. He did not develop any written criteria or rely upon any documentation in making his decision. *Plaintiffs' Ex. 1, Transcript of Board Hearing, at 74:11-20*. This proposal eliminated via a RIF five (5) program administrator positions, including those held by Beasley, Pride, and Townsend. *Plaintiffs' Exhibit 7, Certified Staff Allocations, at 6*. The remaining program administrators were Bobette "Leta" Ray and Brandy Beckman, who were white. The sole source of the funding for the program administrators' salary was the National School Lunch Act (NSLA). NSLA funding is restricted and could not pay for the salaries of teachers or other administrators. *Plaintiff's Ex. 1, Transcript of Board Hearing, at 171:3-25*. This funding source was not included in the PCSSD's preliminary budget for 2018-19 that was developed by Denise Palmer and presented to the Board in February 2018. *Id. at 42:13-43:18*; and *Defendants' Exhibit 1*. During the Plaintiffs' board hearing, Denise Palmer testified that this was the first time that she had prepared a preliminary budget projection and that no one had requested or directed her to do a budget analysis to determine where PCSSD stood financially. *Plaintiffs'*

*Exhibit 1, Transcript of Board Hearing, at 55:16-56:5*.

Plaintiffs brought to the Board's attention that the district already had achieved through Warren's preferred method of attrition a comparable reduction in administrative salaries to that proposed in the projected 2018-19 budget. As of June 11, 2018, the school year 2018-19 was expected to have reduced expenses through resignations and other attrition $998,500.00. *Plaintiffs' Exhibit 1, Transcript of Board Hearing, Employees' Exhibit 8*. By comparison, the Board-directed reductions totaled $1,001,000.00, for a modest difference of $2,500.00. *Plaintiffs' Exhibit 1, Transcript of Board Hearing, Employees' Exhibit 7*.

Brewer recommended that Plaintiff Shirley's position be reduced from twelve months to eleven months, which cost Shirley more than $10,000 in salary. Plaintiff Shirley had the responsibility in the Learning Services Department of addressing the PCSDD's overall Gifted and Talented programs. She is similarly-situated to Jo Ann Kohler, the white director of fine arts. Brewer cut her pay also by twenty-eight days for a similar amount of approximately $10,000.00. However, he subsequently reinstated Kohler's days with the pretext of assigning her a greater workload. *Doc. 22, ¶ 11*.

    C.    *Bumping Rights and the Recall Provision*

PCSSD has a RIF policy that it did not follow when nonrenewing the Plaintiffs' contracts. According to this policy, "the Superintendent will *recommend* and the Board will approve the administrative classifications and number of positions to be reduced." (emphasis added.) *Plaintiffs' Exhibit 5, RIF Policy*. Warren did not agree with the certified staff allocations presented to the Board by Brewer and told Brewer and the Board those were not her recommendations. *Plaintiffs' Ex. 1, Transcript of Board Hearing, at 161:19-162:5*. The minutes of the April 28 board meeting show that Warren signed the letters recommending nonrenewal under duress and only after being

5

instructed to do so by the Board:

> Paul Brewer addressed the Board regarding non-renewal letters that Dr. Warren had failed to sign, stating they were not her recommendations. Mr. Brewer stated he had consulted with Will Reid, Dr. Tackett, and Dr. McNulty regarding restructuring that needs to be done in the District. He reminded the Board that the law states these letters must be signed by the Superintendent of Schools. After lengthy discussions between the Board and Dr. Warren, Dr. Warren asked if she could hear the Board's Directive regarding signing the letters. Mr. Maune stated, "I understand it is your job to sign these letters, I would like for you to sign these as a directive from the Board". Dr. Warren stated, " I will sign these per Mr. Maune's directive."

*Plaintiffs' Exhibit 4, Board Minutes from 4/28/18*. The state law to which Brewer was referring to is Ark. Code Ann. § 6-17-1506(b)(1) ("Termination, nonrenewal, or suspension shall only be upon recommendation by the superintendent.") Plaintiffs' counsel, John Walker, timely objected before the Board to the way in which the AFTDA had not been substantially complied with. *Plaintiffs' Exhibit 1, Transcript of Board Hearing, at 13:19-14:20*.

Prior to Plaintiffs' board hearing, McNulty met with most of the Plaintiffs on two separate occasions. On April 30, 2018, he met with all five program administrators and informed them that two instructional strategist positions would be created that would have job descriptions like their current positions. McNulty also said that his goal was to rehire three or four of the program administrators after the RIFs. On May 2, 2018, he showed a draft of the job descriptions to the program administrators and told them that they were welcome to apply to be instructional strategists. *Defendants' Exhibit 8, Depo. of Jennifer Beasley, at 38:22-40:9, 46:8-47:4*; and *Plaintiffs' Exhibit 11, Email from McNulty dated May 4, 2018*. On June 11, 2018, the Board approved the "recommendations" from Warren to non-renew the contracts of Beasley, Pride, and Townsend and to reduce the amount of days in Shirley's contract. *Plaintiffs' Ex. 1, Transcript of*

*Board Hearing, Board Findings.*

Although Townsend applied to be a district instructional strategist, the PCSSD gave one of the vacancies to Ray, who was not qualified for the position. Ray was in her first year with the PCSSD. She lacked certification as a curriculum program administrator and was hired with an Additional Licensure Program (ALP) for the 2017-18 school year, administrator. *Plaintiffs' Exhibit 12, Application of Nicole Townsend for District Instructional Strategist; Plaintiffs' Exhibit 13, Educator Licensure for Nicole Townsend;* and *Plaintiffs' Exhibit 14, Educator Licensure for Leta Ray.* At the same time, Plaintiffs Beasley, Pride, and Townsend were fully certified as administrators. *Doc. 22, ¶ 26*. Defendants rehired Ray even though she was less qualified for the position than Beasley, Pride, and Townsend.

The PCSSD did not apply its RIF policy when selecting Ray for the position of district instructional strategist. According to the recall policy, "As vacancies or staff buildup in each job position occurs, the employees displaced or laid off from those job positions will be recalled to them in reverse order of layoff. An individual may not be recalled to a higher position." *Doc. 22, at 2*. The program administrator and district instructional strategist positions essentially had the same eligibility requirements, duties, and responsibilities. *Plaintiffs' Exhibit 8, Posting for Program Administrator; Plaintiffs' Exhibit 9, Posting for District Instructional Strategist; Defendants' Ex. 3, Depo. of Paul Brewer, at 90:5-14*. Beasley and Pride had more experience within the PCSSD, including as program administrators, than Ray had. Both women would have been ahead of Ray on any recall list. Pride did not apply to be a district instructional strategist because she assumed that Defendants would follow the recall provision of its RIF policy and McNulty said that it was not necessary that she apply. *Defendants' Exhibit 7, Depo. of Kiffany Pride ,at 31:4-32:4*.

The school district's RIF policy includes a "bumping" provision, which gives preference to administrators negatively affected by a RIF. The provision reads, in part, "An affected administrator is eligible to "bump" into any lower level job previously held by the affected administrator, provided the affected administrator has more cumulative seniority in previous and any higher level position(s) than the least senior employee in that job position." Both Beasley and Shirley exercised their bumping rights with Warren prior to their board hearing. Shirley was exercising her bumping right for positions she previously held. She made these requests to Warren and later to McNulty. She was seeking middle school principal positions at Robinson, Sylvan Hills, and Maumelle at the time. *Plaintiffs' Exhibit 9, Depo. of Laura Shirley, at 32:17-34:17*. Warren denied their requests supposedly because seniority was not to be considered. *Plaintiff's Exhibit 1, Transcript of Board Hearing, Employees Exhibits 13-16*. However, Director of Fine Arts Jo Ann Kohler, who is white, was subjected to a RIF during the same process but requested and accepted additional work duties for English Language Learners (ELL), which allowed her to retain a twelve-month contract. Contrary to Warren's responses to Beasley and Shirley, Brewer told Kohler that seniority was a consideration and that Shirley had greater priority as a more senior employee. *Plaintiff's Exhibit 1, Transcript of Board Hearing, at 151:4-25*.

After Plaintiffs had filed the original Complaint, Shirley exercised her bumping right to be assigned as principal for Robinson Middle School, for which she would receive greater compensation. She did so on or about June 11, 2019. Despite her application for the position, the PCSSD selected a younger, less-qualified woman, Yaa Appiah-McNulty, for the position. Shirley, who was born in 1958, had five years of experience as an assistant principal and four years of experience as a principal within the PCSSD. She also had experience as an administrator who exercises supervision over principals. By contrast, Appiah-McNulty has much less of this kind of

8

relevant experience to be middle school principal for the PCSSD. *Doc. 22, ¶ 11*.

On January 3, 2020, having exhausted their administrative prerequisites under Title VII, Plaintiffs filed their Second Amended Complaint. *Doc. 22*.

## III. Argument

    A.    *Standard for summary judgment*

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment when the movant shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56 (c). The Court must view the evidence in the light most favorable to the nonmoving party and make all reasonable inferences in that party's favor. *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 686 (8th Cir. 2012), *rehearing and rehearing en banc denied* June 8, 2012 (citation omitted). In a summary judgment context, a court neither weighs competing evidence nor resolves credibility issues. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 Ct. 2505 (1986).

    B.    *Genuine issues of material fact establish that Defendants violated the ATFDA when the school district non-renewed or partially non-renewed Plaintiffs' contracts*

Contractual relationships exist between public school districts in Arkansas and their teachers. Under the AFTDA, a teacher "means any person, exclusive of the superintendent or assistant superintendent, employed in an Arkansas public school district who is required to hold a teaching license from the State Board of Education as a condition of employment." Ark. Code Ann. § 6-17-1502(a)(2). Three different adverse employment actions (terminations, nonrenewals, and suspensions) trigger the protections of the AFTDA for teachers in privity with school districts. There is a procedure, however, that a school district must follow take such adverse employment actions. According to Ark. Code Ann. § 6-17-1506(b)(1), "Termination, nonrenewal, or

suspension shall only be upon recommendation by the superintendent." The adverse employment action that is at issue in this case is the nonrenewal and partial nonrenewal of the Plaintiffs' contracts in the spring of 2018 by the PCSSD. A board of directors may choose to non-renew a licensed teacher's contract only when "there is a reduction in force created by districtwide reduction in licensed personnel, for incompetent performance, conduct which materially interferes with the continued performance of the teacher's duties, repeated or material neglect of duty, or other just and reasonable cause." *Ark.Code Ann. § 6-17-1510(b)(1)*. In addition, the AFTDA requires that the nonrenewal substantially comply with the provisions of the ATFDA or the school district's personnel policies. *Ark. Code Ann. § 6-17-1503*.

Defendants' attempt to distinguish between a RIF and a nonrenewal is a red herring. A RIF is an example in the statute of a "just and reasonable cause" that would justify a nonrenewal. It is not an adverse employment action distinct from a termination, nonrenewal, or suspension. Plaintiffs contend that they were subject to a RIF that Defendants failed to execute according to their own policy. Indeed, the district's counsel, Jay Bequette, entered a copy of the PCSSD's RIF policy into the record as an exhibit for each of the four Plaintiffs. *Plaintiff's Exhibit 1,Transcript of Board Hearing, District's Exhibit 3 for each employee*. These exhibits should be dispositive of the issue. If the PCSSD did not non-renew Plaintiffs via a RIF, then why did their counsel submit the RIF policy in support of the non-renewals? In addition, the certified allocations proposal was passed by the Board on April 19, 2018. This proposal listed the five program administrators as employees that were part of a RIF. *Plaintiffs' Ex. 3, Board Minutes from 4/19/18*; and *Plaintiffs' Exhibit 7, Certified Staff Allocations for 2018-19, at 5*.

Defendants offered the false RIF/non-renewal distinction to distract from the central issue in this case regarding the ATFDA: the Board did not substantially comply with the AFTDA.

10

Warren did not sign the letters of non-renewal of her own free will and did so only after the Board ordered her. The duress that Warren experienced is evident from the Board's own minutes:

> Paul Brewer addressed the Board regarding non-renewal letters that Dr. Warren had failed to sign, stating they were not her recommendations. Mr. Brewer stated he had consulted with Will Reid, Dr. Tackett, and Dr. McNulty regarding restructuring that needs to be done in the District. He reminded the Board that the law states these letters must be signed by the Superintendent of Schools. After lengthy discussions between the Board and Dr. Warren, Dr. Warren asked if she could hear the Board's Directive regarding signing the letters. Mr. Maune stated, "I understand it is your job to sign these letters, I would like for you to sign these as a directive from the Board". Dr. Warren stated, " I will sign these per Mr. Maune's directive."

*Plaintiffs' Exhibit 4, Board Minutes from 4/28/18*. The state law that Brewer was referring to is Ark. Code Ann. § 6-17-1506(b)(1). The Board also violated its own RIF policy. *Plaintiffs' Exhibit 5, RIF Policy*. The minutes of this board meeting and the subsequent testimony of Warren at the board hearing for Plaintiffs prove that Warren did not agree with the stated reason for nonrenewal, did not draft the notices, and did so only after the Board directed her to do so. *Plaintiffs' Exhibit 4, Board Minutes from 4/28/18*; and *Plaintiffs Ex. 1, Transcript of Board Hearing, at 162:14-21*. Moreover, Plaintiffs' counsel, John Walker, timely objected before the Board to the manner in which the AFTDA had not been substantially complied with. *Plaintiffs' Exhibit 1, Transcript of Board Hearing, at 13:19-14:20*.

Defendants also did not substantially comply with the AFTDA because they lacked a "just and reasonable cause" for subjecting Plaintiffs to a RIF. Interim Superintendent Warren clearly did not believe that the reason for the RIF was "just and reasonable." *Plaintiffs' Exhibit 4, Board Minutes from 4/28/18*; and *Plaintiffs Ex. 1, Transcript of Board Hearing, at 162:14-21*. In the letters of non-renewal for Beasley, Pride, and Townsend, the reason for Warren's "recommendation" was as follows:

> 1. In order to meet the District's need to reduce expenditures to match available revenue and to more efficiently manage District resources, your position with the District is being eliminated.

*Plaintiffs' Exhibit 1, Transcript of Board Hearing, District's Exhibit 2 for Beasley, Pride, and Townsend*. Shirley received a letter with the same rationale regarding her contract reduction. *Plaintiffs' Exhibit 1, Transcript of Board Hearing, District's Exhibit 2 for Beasley, Pride, and Townsend*. During the board hearing held on June 11, 2018 Brewer testified that his decision regarding which jobs to RIF were arbitrary. He did not develop any written criteria or rely upon any documentation in making his decision. *Plaintiffs' Ex. 1, Transcript of Board Hearing, at 74:11-20*. This proposal eliminated via a RIF five (5) program administrator positions, including those held by Beasley, Pride, and Townsend. *Plaintiffs' Exhibit 5, at 6*. The sole source of the funding for the program administrators' salary was the National School Lunch Act (NSLA). NSLA funding is restricted and could not pay for the salaries of teachers or other administrators. *Plaintiff's Ex. 1, Transcript of Board Hearing, at 171:3-25*. This funding source was not included in the PCSSD's preliminary budget for 2018-19 that was developed by Denise Palmer and presented to the Board in February 2018. *Id. at 42:13-43:18*; and *Defendants' Exhibit 1*.

Plaintiffs brought to the Board's attention that the district already had achieved through Warren's preferred method of attrition a comparable reduction in administrative salaries to that proposed in the projected 2018-19 budget. As of June 11, 2018, the school year 2018-19 was expected to have reduced expenses through resignations and other attrition $998,500.00. *Plaintiffs' Exhibit 1, Transcript of Board Hearing, Employees' Exhibit 8*. By comparison, the Board-directed reductions totaled $1,001,000.00, for a modest difference of $2,500.00. *Plaintiffs' Exhibit 1, Transcript of Board Hearing, Employees' Exhibit 7*.

C.  *Plaintiffs were subjected to a RIF because they are African-American*

1.  *McDonnell Douglas Standard*

In a Title VII case, a burden-shifting framework such as the one described *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973), must be used to determine whether intentional discrimination occurred. *See also*, *Ryther v. KARE 11*, 108 F.3d 832, 836 (8th Cir. 1997) (*en banc*), *cert. denied*, 117 S.Ct. 2510 (1997). First, the plaintiff must make out a prima facie case. While the burden of establishing a prima facie case of discrimination is on the plaintiff, such a burden "is not onerous." *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Second, if a prima facie case is established, the defendant must give evidence of a legitimate, nondiscriminatory reason for the adverse employment action taken against the plaintiff. *See Burdine*, 450 U.S. 248, 254-55 (1981). Third, assuming that the defendant carries its burden of production, the plaintiff has to prove that the defendant's articulated reason was in fact "not the true reason for the employment decision" and a "pretext for discrimination." *Id.* at 256.

Regarding a claim of discriminatory discharge, a plaintiff must prove the following elements of a *prima facie* case: (1) she was a member of a protected class; (2) she was meeting the employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Twymon v. Wells Fargo & Co.,* 462 F.3d 925, 934 (8th Cir.2006) However, in the context of a RIF, a plaintiff may establish an inference of unlawful discrimination even though she is not replaced by a person outside her protected class by providing additional evidence of race discrimination. *Ahmed v. American Red Cross,* 218 F.3d 932, 933 (8th Cir.2000).

2.  *Genuine issues of material fact exist regarding Plaintiffs' RIF race discrimination claims*

Plaintiffs satisfy their burden of production regarding the *prima facie* case of

discriminatory discharge through a RIF. Each Plaintiff is African-American. The non-renewal letters do not allege that they were failing to meet he legitimate job expectations of the PCSSD. Plaintiffs were discharged. Finally, either a person outside a protected class was treated more favorably (like Jo Ann Kohler or Leta Ray) or the circumstances of the RIF itself is evidence of race discrimination.

PCSSD hired Ray for the position of district instructional specialist even though Townsend was much more qualified. The program administrator and the district instructional strategist positions essentially had the same eligibility requirements, duties, and responsibilities. *Plaintiffs' Exhibit 8, Posting for Program Administrator; Plaintiffs' Exhibit 9, Posting for District Instructional Strategist*; *Defendants' Ex. 3, Depo. of Paul Brewer, at 90:5-14*. Ray and Townsend were effectively applying for the same job that was eliminated via a RIF. Townsend met the eligibility requirement of having an administrator's license while Ray lacked such a credential. Ray was on an ALP for 2017-18 when she was a program administrator at the PCSSD. In addition, Townsend had put her administrator's license to use for seven years. *Plaintiffs' Exhibit 12, Application of Nicole Townsend for District Instructional Strategist; Plaintiffs' Exhibit 13, Educator Licensure for Nicole Townsend;* and *Plaintiffs' Exhibit 14, Educator Licensure for Leta Ray*. Because Townsend was replaced by a white woman who was much less qualified, she establishes a *prima facie* case of discriminatory discharge.

The PCSSD executed the RIF with discriminatory intent through the conduct of its Board members, McNulty, and Brewer. Warren, who is black, argued to the Board that attrition of staff could achieve budget without any need to eliminate personnel. *Plaintiffs Ex. 1, Transcript of Board Hearing, at 162:14-21*. As a result, the Board, Brewer, and McNulty made sure that she was effectively removed as an independent decision maker. *Plaintiff's Ex. 1, Transcript of Board*

*Hearing, at 159:1-25*; and *Plaintiffs' Exhibit. 2, Board Minutes from 4/10/18*. Linda Remele, a white board member, called McNulty after he had been hired and told him that the Board intended to make cuts in the Central Office. *Plaintiffs' Exhibit 6, Depo. of Charles McNulty, at 14:11-15:7*. In a conversation with Brewer, Brewer informed McNulty that the Board had singled out the program administrators for staff cuts. *Id., at 17:20-18:2*. Even though the Board was shown at Plaintiffs' hearing that discharging Plaintiffs was unnecessary, the Board voted to non-renew their contracts. Taken together with the forced signing of the letters of non-renewal by Warren, the evidence shows that the Board, McNulty, and Brewer subjected Plaintiffs to a RIF for a reason that is pretextual and with an intent to discriminate.

The PCSSD discriminated against Plaintiffs after the RIF by denying them their bumping and recall rights, which were included in the RIF policy. Both Beasley and Shirley exercised their bumping rights to no avail. *Plaintiffs' Exhibit 9, Depo. of Laura Shirley, at 32:17-34:17*. Warren denied their requests supposedly because seniority was not to be considered, which is contrary to RIF policy. *Plaintiff's Exhibit 1, Transcript of Board Hearing, Employees Exhibits 13-16*. Indeed, Brewer told Kohler that seniority was a consideration and that Shirley had greater priority as a more senior employee. *Plaintiff's Exhibit 1, Transcript of Board Hearing, at 151:4-25*. Regarding recall rights, Beasley and Pride had more experience within the PCSSD, including as program administrators, than Ray had. Both women would have been ahead of Ray on any recall list. Pride did not apply to be a district instructional strategist because she assumed that Defendants would follow the recall provision of its RIF policy and McNulty said that it was not necessary that she apply. *Defendants' Exhibit 7, Depo. of Kiffany Pride ,at 31:4-32:4*.

Because there are genuine issues of material fact regarding Plaintiffs' discriminatory RIF claims, the Court should deny summary judgment. Defendants should be held liable regardless of

15

the identity of the agent or agents who intentionally caused the racial discrimination. *See Bennett v. Riceland Foods, Inc.,* 721 F.3d 546, 551 (8th Cir. 2013) ("[A]n employer may be vicariously liable for an adverse employment action if one of its agents—other than the ultimate decisionmaker—is motivated by discriminatory animus and intentionally and proximately causes the action.")

    D.   *Shirley experienced age discrimination and unlawful retaliation*

On or about June 11, 2018, Shirley exercised her bumping right to be assigned as principal for Robinson Middle School, for which she would receive greater compensation. The PCSSD hired a younger, less-qualified woman, Yaa Appiah-McNulty, for the position. Shirley, who was born in 1958, had five years of experience as an assistant principal and four years of experience as a principal within the PCSSD. She also had experience as an administrator who supervises principals. By contrast, Appiah-McNulty lacked such relevant experience. Furthermore, Shirley contends that Defendants retaliated against her because she applied to fill this vacancy after she had filed her original Complaint. *Doc. 22, ¶ 11*.

## IV. Conclusion

For all the reasons stated above, the Court should deny Defendants' Motion for Summary Judgment in its entirety.

                Respectfully submitted,

                Shawn G. Childs
                Shawn G. Childs
                Bar No. 99058

                John W. Walker, P.A.
                1723 Broadway
                Little Rock, Arkansas 72206
                501-374-3758
                501-374-4187 (facsimile)

Email: schilds@gabrielmail.com

ATTORNEY FOR PLAINTIFFS