**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

JENNIFER BEASLEY, DR. KIFFANY PRIDE,
LAURA SHIRLEY, AND NICOLE TOWNSEND                    **PLAINTIFFS**

v.                              **No. 4:18-cv-00508-DPM**

DR. CHARLES MCNULTY, in his official capacity
as Superintendent of Schools of the Pulaski County
Special School District; the BOARD OF DIRECTORS
of the Pulaski County Special School District; and the
PULASKI COUNTY SPECIAL SCHOOL DISTRICT,
a public body corporate                              **DEFENDANTS**

## DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM BRIEF IN SUPPORT

This Reply Brief is submitted in support of the Motion for Summary Judgment (Dkt. No. 33) ("Motion") and accompanying Brief in Support (Dkt. No. 34) filed by Defendant, Pulaski County Special School District ("PCSSD" or "District"), pursuant to Rule 56 of the Federal Rules of Civil Procedure.   For the reasons discussed herein, the District is entitled to summary judgment as a matter of law.

Plaintiffs raise three points in their Response and Response Brief to PCSSD's Motion. First, they argue that PCSSD violated the Arkansas Teacher Fair Dismissal Act ("ATFDA" or "the Act") by coercing the interim superintendent to sign Plaintiffs' non-renewal letters and by failing to follow the Reduction in Force ("RIF") procedures set forth in PCSSD's policies.   Second, they claim PCSSD's failure to follow its RIF policy, along with the hiring of white individuals following Plaintiffs' non-renewals, demonstrates racial discrimination.   Finally, Plaintiff Shirley asserts that PCSSD's decision to hire someone else as principal for Robinson Middle School was the result of age discrimination and unlawful retaliation.   Plaintiffs failed to address PCSSD's motion for summary judgment on their breach-of-contract claims.

In reply to Plaintiffs' ATFDA responses, PCSSD argues that their substantial compliance with the Act leaves no room for a genuine issue of material fact and that the procedural concerns addressed by the Act were met, giving Plaintiffs notice and opportunity to be heard before their contracts were non-renewed by the PCSSD Board.   PCSSD further asserts that the RIF policy is irrelevant to either Plaintiffs' ATFDA or their race discrimination claims.

Additionally, PCSSD non-renewed the contracts of *all* program administrators in Plaintiffs Beasley, Townsend, and Pride's department, including its white employees, and subsequently hired more African American individuals to fill the newly created positions in the departments. Where the RIF policy is inapposite to Plaintiffs' claims and PCSSD hired African American individuals to fill new positions, Plaintiffs are left with no evidence suggesting their non-renewals were the result of racial animus.

Finally, PCSSD argues that Plaintiff Shirley's claims of age discrimination and unlawful retaliation consist only of conclusory allegations, lacking any inference of unlawful conduct, which are insufficient to preclude summary judgment on her claims.

1. **PCSSD Substantially Complied with the Requirements of the Arkansas Teacher Fair Dismissal Act.**

Plaintiffs allege PCSSD violated the provision of the Arkansas Teacher Fair Dismissal Act, which governs all adverse employment actions taken against teachers in Arkansas.   Ark. Code Ann. § 6-17-1501, *et seq.*   Plaintiffs argue that 1) PCSSD did not follow its RIF procedures and 2) Dr. Janice Warren, the then Interim Superintendent, was "coerced" into signing Plaintiffs' non-renewal letters, which thereby violated ATFDA.   Plaintiffs' arguments fail.

First, Plaintiffs claim that PCSSD's distinction between a RIF and a non-renewal is a red herring, but Plaintiffs concede that under ATFDA a RIF is an example of just and reasonable cause

to non-renew Plaintiffs.   *See* Response at p. 10 and Ark. Code Ann. § 6-17-1507(a).   Even if PCSSD violated its RIF procedures (which it did not, as they were inapplicable), Plaintiffs concede a RIF is just and reasonable cause for non-renewal of their contracts.   Moreover, Plaintiffs have failed to identify how classifying their employment action as a non-renewal and not a RIF would have in any way changed the outcome of their employment, or how this classification was discriminatory.

The Act only requires substantial compliance with the statutory provisions and District policies.   *See* Ark. Code Ann. § 6-17-1503(a)(2) ("That the current standard for compliance with this subchapter and a school district's personnel policies of strict compliance should be lowered to substantial compliance.")   Alas, even deviations from the RIF policy, if true, does not violate the Act.   Case law is clear that the provisions of ATFDA are largely to provide teacher's with proper procedural considerations before being subjected to adverse employment actions.   *See Rogers v. Masem*, 788 F.2d 1288, 1294-95 (8th Cir. 1985); *Williams v. Day*, 412 F.Supp. 336, 344 (E.D. Ark. 1976) (stating the Act "provides certain limited *procedural* requirements that can be invoked by a teacher when his contract is not renewed") (emphasis added).   The rare finding that a school board abused its discretion in non-renewing a teacher's contract typically centers around a finding that the teacher was not afforded the opportunity to be heard due to a board's failure to follow the ATFDA's procedural provisions.   *See McMahan*, 289 Ark. at 500-501, 712 S.W.2d at 906. Accordingly, to substantially comply with the Act, PCSSD needed only to substantially follow the procedures outlined within the ATFDA and its policies.   It did just that.

On or about April 27, 2018, Dr. Warren, the then interim superintendent, signed and sent letters notifying each Plaintiff of the decision not to renew their contracts.   *See* Dkt. No. 33-4, (Plaintiffs' non-renewal notices).   These notices were provided in writing before the statutorily

mandated May 1st deadline and outlined in separately numbered paragraphs the reason for the adverse employment action.    The notices were signed by the interim superintendent and provided just and reasonable cause for Plaintiffs' non-renewal.    Plaintiffs were then afforded an administrative hearing on the issue of their non-renewal before the PCSSD board.    *See* Dkt. No. 41-1, (full board hearing record).    These examples all show compliance with the Act's requirements, and Plaintiffs have not identified any procedural requirement within the ATFDA that PCSSD failed to satisfy.    The RIF procedures in PCSSD's own policy manual are inapposite to whether it violated the ATFDA procedural safeguards.

Second, the assertion that Dr. Warren was "coerced" into signing the non-renewal letters is not a basis for determining PCSSD did not substantially comply with the Act.    Dr. Warren indeed signed the letters, albeit at the direction of a PCSSD Board.    *See* Plaintiffs' Response Brief at p. 11. (Dkt. No. 42).    There is not even evidence of coercion in the record, only a directive from the board of directors to its superintendent to perform a legal act.    At bottom, the ultimate authority to non-renew Plaintiffs' contracts rested with the PCSSD Board, the decision makers, and the Board provided all ATFDA procedural safeguards to Plaintiffs.    *See* Ark. Code Ann. § 6-17-1510.

PCSSD substantially complied with the ATFDA's requirements.    Plaintiffs were given the opportunity to be heard at an administrative board hearing prior to their non-renewal. PCSSD's substantial compliance and Plaintiffs' opportunity to be heard demonstrate that no genuine issue of material fact exists as to whether the ATFDA was not violated.    Plaintiffs have failed to provide any evidence of such a violation, and summary judgment on their ATFDA claims is proper.

### 2.   Plaintiffs Failed to Prove Pretext for Discrimination, Where They Rely on Violation of the RIF Policy as Evidence of Discrimination.

Plaintiffs' Response outlines two types of evidence allegedly demonstrating race discrimination, both of which fail to overcome PCSSD's legitimate, non-discriminatory reasons for non-renewal.   Preliminarily, Plaintiffs point to the fact that certain white individuals were "rehired" for new positions created following the non-renewal of all program administrators working in Plaintiffs' department.   *See* Response Brief at p. 14.   This evidence does not aid in Plaintiffs' race discrimination claims for two reasons.

First, Plaintiffs' race discrimination claims, per their complaint and amended complaints, relate only to the non-renewal of their contracts, not to rehiring.   They did not allege failure to hire claims, but wrongful termination claims.   So, in looking at evidence regarding similarly situated employees, this Court should look to whether such employees were also non-renewed, as were Plaintiffs.   This ends to pretext analysis as Plaintiffs have not alleged a claim for failure to rehire.   Indeed, Plaintiffs Beasley and Pride admitted they did not apply for the new Instructional Specialist positions.   *See* PCSSD Brief, Dkt. No. 34, at pp. 5-6.

Even if the Court was to consider a failure to hire claim, only Plaintiff Townsend applied and was not offered the position of Instructional Specialist.   *Id*.   Plaintiffs purport to attach the Educator Licensure for Townsend and the white employee offered the position, Leta Ray, suggesting Townsend was more qualified.   *See* Dkt. Nos. 41-13 and 41-14.   These exhibits were not authenticated by and attached to an affidavit, which is required for summary judgement documents.   *See Shanklin v. Fitzgiven*, 397 F.3d 596, 602 (8th Cir.).   Accordingly, the exhibits should not be considered per Federal Rule of Evidence 56(c)(1)(B).   Even if the exhibits were to be considered, the most glaring observations is that Townsend was awarded an Arkansas license

in 2017, while Ray was first awarded a license in 1997.   Clearly, PCSSD had a legitimate personnel reason to hire Ray over Townsend, which Courts are not to second guess. *See Kincaid v. City of Omaha,* 378 F.3d 799, 805 (8th Cir. 2004).

Townsend is left with no evidence that she was more qualified than Ray for the position. Townsend's only claim is that she is African American and this must constitute race discrimination.    Without more, and considering the record as a whole, this is insufficient evidence of race or gender discrimination to prove pretext and survive summary judgment on this claim. *See Pottenger v. Potlatch Corp.*, 329 F.3d 740, 748 (9th Cir. 2003) ("Without more ... the fact that Nelson was younger than Pottenger does not create a triable issue of pretext."); *Dunaway v. Int'l Bhd. Of Teamsters*, 310 F.3d 758, 767 (D.C. Cir. 2002) ("The Teamsters' decision to replace her with a younger woman is insufficient for a jury to conclude that she lost out because of [her] age." (quotation marks omitted)); *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727 (7th Cir. 1998) ("While *Cianci* also points to her replacement by a male as evidence of gender discrimination, this is simply insufficient to demonstrate that *Cianci's* gender motivated the decision to terminate her.").

Next, as demonstrated in PCSSD's Motion, *all* program administrators in Beasley's, Townsend's, and Pride's department were cut, including two white program administrators. Plaintiffs Beasley, Townsend and Pride were not treated differently than the white employees regarding their non-renewals—the adverse employment action at issue.    Further, as also discussed in PCSSD's Motion, two-thirds of the persons hired back to Plaintiffs' department after restructuring and Plaintiffs' non-renewals were African American.    Even if the race of persons hired for different positions following their non-renewals is relevant, PCSSD's subsequent hiring of non-white persons demonstrates their motives were not discriminatory.    *See Robinson v.*

*American Red Cross*, 753 F.3d 749 (8th Cir. 2014) (holding subsequent hiring of non-white employee demonstrated lack of racial animus).

The most frequent argument throughout Plaintiffs' Response is their allegation that PCSSD's failure to follow its RIF procedures evidences racial discrimination.   This entire argument by Plaintiff fails because despite what you call it, Plaintiffs have not explained why a RIF would have been more advantageous to them or how it would have in anyway changed the employment decision.   Plaintiffs were non-renewed in their position for the reasons outlined in their non-renewal letter, which was a legitimate and non-discriminatory reason.

But still, Plaintiffs non-renewals were not the result of a RIF.   Brewer clearly stated this on the record at the board hearing, "but these were non-renewals; these were not RIFs."   Dkt. No. 41-1 at p. 23 of ECF filing.   The Hearing Officer at the board hearing also recognized the confusion between the two and she helped to clarify the non-renewal vs. RIF testimony for the Board.

> **HEARING OFFICER:**   Okay.   Mr. Walker, let me see if I can cut through some of this.
> Let me - - let me ask Mr. Brewer something.
> Mr. Brewer, is what you're saying is the Board directed you – all to look at Central Office   staff and see what you could reduce?
> **THE WITNESS:**   (Nodding hearing up and down).
> **HEARING OFFICER:**   And this was the result of your seeing what you could reduce?
> **THE WITNESS:**   Yes.
> **HEARING OFFICER:**   Not just these four people, but these four people, plus –
> **THE WITNESS:**   Plus myself, Danny Ebbs, John Tackett, Dr. Goodwin, who are all basically Caucasian.
> **HEARING OFFICER:**   Okay.   And so you're not looking at a district-wide RIF; you're looking at –
> **THE WITNESS:**   Central Office.
> **HEARING OFFICER:**   Central Office, how to reduce the staff in Central Office, per what the Board is wanting to do?
> **THE WITNESS:**   Yes.

> **HEARING OFFICER:**   Okay.

*See* Dkt. 41-4 at p. 25 of ECF filing.

Brewer's testimony was consistent with PCSSD's entire position in this case—it wanted to non-renew all the program administrators so it could restructure the learning services department to save cost, which coincided with the arrival of the new superintendent, Dr. McNulty.   *See* PCSSD's Opening Brief, Dkt. No. 34 at p. 5.

Plaintiffs also point to the board's meeting minutes and certified allocations, but these documents also illustrate there was no RIF.   Mention of a RIF is completely absent from the meeting minutes referenced.   *See* Dkt. No. 41-3, Board minutes.   The only "RIF (Delete)" contained in the Certified Allocations is for the Program Administrator position in the NSLA department, which the document clearly shows "0" persons holding that position.   *See* Dkt. No. 41-7 at p 7, PCSSD Certified Allocations.   In other words, no persons were subjected to a RIF, even though that position was marked for RIF.

All the evidence proffered by PCSSD leads to the same incontrovertible conclusion: Plaintiffs were not the subject of a RIF.   All testimony from the administrative hearings, all deposition testimony, and all documents provided to this Court illustrate that Plaintiffs' contracts were non-renewed for other just and reasonable cause.

**3.    Plaintiff Shirley Failed to Provide Any Evidence of Age Discrimination or Retaliation.**

To survive summary judgment on an age-discrimination claim, a plaintiff must prove by a preponderance of the evidence that a defendant's proffered reasons were a pretext for discrimination.   *Kohrt v. Midamerican Energy Co.*, 364 F.3d 894, 897 (8th Cir. 2003).   Such a

showing requires more than an employee's mere discrediting an employer's proffered reason for the adverse employment decision.   *Id.* at 898 (internal quotations omitted).

If an employer provides a non-discriminatory reason, a plaintiff must present evidence that "considered in its entirety, (1) creates a question of material fact as to whether the defendant's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision."   *Id.* at 897 (internal quotations omitted).   "Cursory" or "conclusory" allegations are insufficient to prove age discrimination.   *Bashara v. Black Hills Corp.*, 26 F.3d 820, 825 (8th Cir. 1994).

To make a prima facie case of retaliation under Title VII, a plaintiff must present evidence demonstrating: (1) she engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) the materially adverse action was causally linked to the protected conduct.   *Brown v. City of Jacksonville*, 711 F.3d 883, 893 (8th Cir. 2013).   Upon a *prima facie* showing, a defendant then has the opportunity to articulate a legitimate, non-retaliatory reason for the adverse action.   *Id.*   It generally takes more than a temporal connection between the protected conduct and the adverse employment action at issue to establish a prima facie case of retaliation.   *Griffith v. City of Des Moines*, 387 F.3d 733, 738 (8th Cir. 2004).

The plaintiff must also show that her engagement in protected conduct was a determinative, not merely a motivating, factor causing the employment decision.   *Robinson*, 753 F.3d at 756. Conclusory allegations of retaliation discrimination, without more, are not enough to overcome a properly supported summary judgment motion.   *See Meredith v. Barnes-Jewish West County Hosp.*, 21 Fed. App'x 531, 532 (8th Cir. 2001) (citing *LaCroix v. Sears, Roebuck, and Co.*, 240 F.3d 688, 693 (8th Cir. 2001) (holding that conclusory statements alone are insufficient).

Plaintiff Shirley relies solely on conclusory allegations of age discrimination and

retaliation.   Shirley is hard-pressed to even prove adverse employment action, as she was offered a supplemental position which would have allowed her to maintain her twelve-month contract, yet she turned it down.   *See* Answer to Second Amended Complaint at ¶ 9. She cannot now claim that the pay reduction imposed by her current eleven-month contract is the result of racial discrimination.

Even so, PCSSD has offered non-discriminatory reasons for the non-renewal of Plaintiff Shirley's full contract, namely the need for budget cuts.   *See* Dkt. No. 33-4 (Shirley non-renewal letters).   Her conclusory allegations of age discrimination do not overcome this legitimate, non-discriminatory reason for the employment action – to more efficiently manage limited District resources.   Afterall, the court is to give "deference to an employer's stated reason for an adverse employment action." *DePriest v. Milligan*, 2015 U.S. Dist. LEXIS 3153 at *29.

Further, as detailed in PCSSD's opening Motion and Brief, she was not subjected to a RIF, so she cannot claim to have been retaliated against via failure to follow RIF procedures.

**4.    Plaintiffs abandoned their Breach of Contract Claims, where they Failed to respond to PCSSD's Motion for Summary Judgment on Those Claims.**

Plaintiffs completely fail to address this issue in their Response.   The failure of Plaintiff to adequately respond to PCSSD's Motion on this claim is an independent basis upon which the Court may grant summary judgment.   *See Carter v. Pulaski Cty. Special Sch. Dist.,* No. 4:18-cv-00029-SWW, 2019 U.S. Dist. LEXIS 14339, at *1 n.1 (E.D. Ark. Jan. 30, 2019) and *McAninch v. Fed. Express Corp.*, 398 F. Supp. 2d 1025, 1038 (S.D. Iowa 2005).

## CONCLUSION

Based upon the foregoing argument and authority, Defendant respectfully submits that its

Motion for Summary Judgment should be granted and that the Plaintiffs' Complaint should be

dismissed with prejudice.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com

By: _____**W. Cody Kees**_____
Jay Bequette, #87012
W. Cody Kees, #2012118