IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JENNIFER BEASLEY; DR. KIFFANY
PRIDE; LAURA SHIRLEY; and NICOLE
TOWNSEND                                                                PLAINTIFFS

v.                              No. 4:18-cv-508-DPM

DR. CHARLES MCNULTY, in his official
capacity as Superintendent of Schools of
the Pulaski County Special School
District; the BOARD OF DIRECTORS of
the Pulaski County Special School
District; and PULASKI COUNTY
SPECIAL SCHOOL DISTRICT, a public
body corporate                                                          DEFENDANTS

ORDER

1. The Pulaski County Special School District made budget cuts ahead of the 2018-19 school year. In particular, the School Board directed cuts in the District's central office, which included the Learning Services Department—educators who focus on improving learning throughout the District. Those cuts included not renewing the contracts of all the program administrators and reducing Shirley's contract length from twelve to eleven months. Beasley, Pride, and Townsend were three of the five program administrators. Shirley ran the District's gifted-and-talented program. The District says these steps were a legitimate way to trim a tight budget, but the educators—all

black women—contend their jobs were cut or changed for discriminatory reasons. Shirley also alleges that the District later discriminated and retaliated against her by hiring a younger, less-qualified person to an open principal position. Last, the educators assert that the District's actions violated the Arkansas Teacher Fair Dismissal Act. The District seeks summary judgment, while the educators seek a trial. *Doc. 33*. The Court takes the material facts, where genuinely disputed, in the educators' favor. *Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019).

**2.** The Court analyzes the educators' race-discrimination claims under Title VII, the Fourteenth Amendment, and 42 U.S.C. § 1983 using the familiar *McDonnell Douglas* framework. *Lucke v. Solsvig*, 912 F.3d 1084, 1088 (8th Cir. 2019). The Court assumes the educators have made a *prima facie* case.

The District has offered a legitimate, nondiscriminatory reason for scaling back Shirley's job and eliminating the others. *Hilde v. City of Eveleth*, 777 F.3d 998, 1004 (8th Cir. 2015). The District says that it needed to make budget cuts, and it explained that need in letters to the educators. *Doc. 33-4*. "Budgetary and labor management considerations are legitimate, nondiscriminatory reasons" for employment decisions such as eliminating or restructuring jobs. *O'Sullivan v. Minnesota*, 191 F.3d 965, 969 (8th Cir. 1999). The record bears out the District's budgetary considerations and supports these job

cuts as a legitimate way to reduce expenses. The claims thus come down to pretext.

The District did not renew the contracts of all five of its Program Administrators in the Learning Services Department. Beasley, Pride, Townsend, and two white employees lost their jobs. *Doc. 22 at ¶ 24.* And, of the six similar positions later filled by the District, four went to black employees, which also indicates a lack of racial animus. *Robinson v. American Red Cross*, 753 F.3d 749, 755–56 (8th Cir. 2014). There is no record evidence that "similarly situated persons of a different race . . . received more favorable treatment." *Cherry v. Ritenour School District*, 361 F.3d 474, 479 (8th Cir. 2004).

The educators also say the budget considerations were illusory. The National School Lunch Act paid the program administrators' salaries; the educators maintain that funding is restricted and could not be used to pay for the salaries of teachers or other administrators. *Doc. 42 at 12.* This funding is restricted. But, the restrictions don't mean the NSLA money could only be used to pay the program administrators' salaries. Though the NSLA funds didn't appear in the 2018–19 school year's preliminary budget projection, *Doc. 33-1*, the record indicates that this money could be reallocated within certain channels, *Doc. 41-1 at 12, 22–23, & 43–44.*

Last, the educators emphasize that the interim superintendent, Dr. Janice Warren, who is a black woman, did not support these job cuts

and believed they would adversely affect student achievement, especially minority student achievement. True. Dr. Warren was consulted, her input was considered, and the difference between her suggestions (budget savings through attrition) and the Board's decision was a mere $2,500. But the Board makes the ultimate decisions on the budget. ARK. CODE ANN. § 6-13-620(6)(A). While these disagreements below the Board level support the educators' claims, they are insufficient to create a jury question on pretext. It is undisputed that the white program administrators were let go, too, and that other white central office employees either lost their jobs or suffered pay cuts. There is just not enough evidence of record to support a verdict of race discrimination for these educators. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1052 (8th Cir. 2011) (en banc).

Shirley's contract was reduced from twelve months to eleven months, and her pay was cut around $10,000. She identifies Jo Ann Kohler as a white comparator that was treated more favorably. Shirley was and is the Director of Gifted and Talented Education; Kohler is the Director of Fine Arts. Kohler's contract was reduced in the same manner as Shirley's, but the educators say that Kohler's lost days were reinstated. That's not the whole story. Both Shirley and Kohler were offered additional work duties helping English Language Learners, duties which would have allowed them to keep twelve-month contracts. *Doc. 40 at ¶ 17*. Shirley declined that offer to pursue other

-4-

positions. Kohler accepted it. These different outcomes don't amount to discrimination. Shirley and Kohler are not similarly situated in every material respect. *Smith v. URS Corp.*, 803 F.3d 964, 970 (8th Cir. 2015). No reasonable juror could conclude that the District's budget-cuts rationale was pretext for racial discrimination against Shirley.

**3.** As to Shirley's failure-to-hire claim, the educators allege that the District also discriminated and retaliated against Shirley by hiring a younger, less-qualified woman, Yaa Appiah-McNulty, as principal for Robinson Middle School. The *McDonnell Douglas* framework applies here, too. *Heisler v. Nationwide Mutual Insurance Co.*, 931 F.3d 786, 794–95 (8th Cir. 2019). But Shirley hasn't made a *prima facie* case. The evidentiary materials contain only conclusory allegations and hints of age discrimination and retaliation. No reasonable juror could conclude, based on this record, that the District discriminated and retaliated against Shirley by hiring Appiah-McNulty.

\* \* \*

There are some record-related loose ends. The educators' motion to strike, *Doc. 44*, is denied. Because the day of filing does not count, FED. R. CIV. P. 6(a)(1)(A) & LOCAL RULE 7.2(b), the District's reply was timely. The Court commends, though, the lawyers' eventual agreement to waive the deadline in any event. The District's unopposed motion to accept a belated reply brief, *Doc. 47*, is denied as moot. The educators' motion for leave to file sur-reply, *Doc. 48*, is

granted—the Court accepts the Townsend licensure materials as authentic, and has considered them.

The District's motion for summary judgment, *Doc. 33*, is granted. The Court will dismiss the educators' federal and constitutional claims with prejudice. And the Court declines to exercise supplemental jurisdiction over their state law claims. 28 U.S.C. § 1367(c)(3); *Nagel v. City of Jamestown, North Dakota*, 952 F.3d 923, 935 (8th Cir. 2020).

So Ordered.

*signature*
D.P. Marshall Jr.
United States District Judge

1 February 2021